E. T. KITCHENS, Appellant,

v.

GULF STATES MARINE & MINING COMPANY, Appellee.

No. 12866.

Court of Civil Appeals of Texas.

Galveston.

Sept. 20, 1956.

Rehearing Denied Oct. 11, 1956.

**194**

Arthur J. Mandell and Mandell & Wright, Houston, for appellant.

Edward W. Watson and Lockhart, Watson & Peterson, Galveston, for appellee.

HAMBLEN, Chief Justice.

Appellant instituted this suit in the District Court of Harris County, seeking damages for injuries sustained to his right leg while employed as a deckhand aboard appellee's tug Dispatch. The suit was brought under the provisions of Title 46, Sec. 688, United States Code Annotated, commonly known as the Jones Act. Appellant alleged that while employed as aforesaid he was on January 14, 1953, ordered to clean out a locker located under the forward deck of appellee's tug; that in said locker employees other than appellant had stowed steel cables, paint and other materials; that pursuant to such orders, appellant pulled out and coiled one long steel cable, and thereupon began pulling out a second steel cable, which had been improperly stowed, so that it was "kinked up"; that as appellant pulled on such cable, attempting to straighten it and get the kinks out, the cable suddenly straightened and flew out, wrapping itself around appellant and striking appellant's right leg over the tibia, seriously injuring appellant and causing a disease known as osteomyelitis to develop. Appellant alleged specific acts of negligence on the part of appellee. Material to this appeal are allegations that appellee failed to shear off or cold-cut the end of the cable and failed to properly wrap the spread-out, loose, frayed and rusty strands of wire on the end of the cable. Appellee by answer alleged acts of contributory negligence on the part of appellant, including the allegation that appellant jerked or pulled upon the cable in a way in which a person of ordinary prudence in the exercise of ordinary care would not have done.

Trial of the issues thus joined was had before a jury, which, in response to special issues submitted and in so far as here material, found as follows:

Issue No. 1. Appellant on January 14, 1953, suffered injury to his right leg while on the Tug Dispatch.

Issue No. 2. That one end of one of the cables stowed in the paint locker aboard the Tug Dispatch, which appellant E. T. Kitchens was ordered to remove, had wires spread out, loose, frayed and rusty.

Issue No. 5. Appellee's failure to shear off or cold-cut the spread out, loose, frayed and rusty strands of wire from one end of said cable was negligence.

Issue No. 6. Such negligence was not a proximate cause of his injuries.

Issue No. 9. Appellee failed to properly wrap the spread out, loose, frayed and rusty strands of wire on the end of the cable.

Issue No. 10. Such failure to properly wrap such cable was negligence.

Issue No. 11. That such failure was not a proximate cause of appellant's injuries.

Issue No. 18. Appellant jerked or pulled upon the cable in a way in which a person of ordinary prudence, in the exercise of ordinary care, would not have done.

Issue No. 19. That such negligence was a proximate cause of appellant's injuries.

Issue No. 22. That such negligence contributed to 33⅓ per cent to appellant's injuries.

Issue No. 24. Appellant had an osteomyelitis of his right leg prior to the accident of January 14, 1953.

Issue No. 25. The accident of January 14, 1953, was not an aggravating or exciting cause of the osteomyelitis in appellant's leg from and after January 14, 1953.

Issue No. 26. Any accident or injuries which appellant had prior to January 14, 1953, were the sole proximate cause of such disability from osteomyelitis from and after January 14, 1953.

Issue No. 27. That appellant would reach his maximum recovery beyond which the condition of his right leg could not be improved by the ordinary treatment known to medical science on November 1, 1956.

Issue No. 28. Appellant sustained no damages.

Upon the receipt of such verdict, the court entered judgment denying appellant any recovery.

Appellant attacks the judgment of the trial court in eight points of error. By points 1 to 3, inclusive, he contends that there was no evidence to support the jury's answers to Special Issues Nos. 6 and 11, or, in any event, that such answers are so against the overwhelming weight and preponderance of the evidence as to be clearly wrong. Appellant's point of error No. 4 presents the same assertions relative to the jury's answers to Special Issues Nos. 24, 25 and 26. By Points of Error Nos. 5 and 6, appellant asserts that there was mis-conduct on the part of the jury in reaching its verdict relative to Special Issues 6, 11 and 28; and by points of error 7 and 8 asserts that there is an irreconcilable conflict between the jury's answers to Issues 6, 11 and 28 on the one hand, and Issues 1, 5, 9, 24, 25 and 26 on the other hand.

In order that appellant's points of error as grouped above may be properly disposed of, it is necessary that a somewhat detailed factual background of this controversy be stated.

Appellant, E. T. Kitchens, who was 40 years of age at the time of the trial, earned his livelihood as a laborer and truck driver when during March of 1940, while a passenger in a truck, the truck turned over causing appellant to suffer a comminuted fracture of the right leg. He was taken to Dr. Stromberg's hospital at Taylor, Texas, where he remained for about ten or twelve weeks, where his leg was set, and after treatment his leg was healed except that it remained in a bowed condition. After he was discharged from the hospital and from treatment, he returned to work as a truck driver. Dr. Stromberg saw him from time to time and found his leg to be in good condition but still bowed, and by reason thereof shorter than his left leg. During 1950 Dr. Stromberg prevailed upon appellant to re-enter his hospital for the purpose of rebreaking the leg to straighten it out. Pursuant to such suggestion appellant re-entered the hospital and in 1950 his leg was rebroken and straightened. After he was discharged, appellant was advised to get a job where he would use his leg a great deal so that the muscles of his leg would build up and he would have a good functional leg. Appellant went to Texas City and took a job with Tin Processing Corporation, which consisted of patrolling the company's premises, an area of many acres, and climbing up and down high stairs, using his leg continuously. After leaving the Tin Processing Corporation, appellant got a job on the tug McDermott, where he worked doing the work of a deckhand, jumping on and off tugs, pulling in lines and

climbing up and down stairs. Shortly after Christmas of 1952, appellant joined the tug Dispatch, owned and operated by appellee. On the morning of January 14, 1953, the captain of the tug Dispatch, Pritchett, ordered appellant to clean out the forward paint locker on the tug. In order to get to the paint locker, appellant had to remove a manhole or hatch cover. After removing the hatch cover, Captain Pritchett and appellant pulled out one long steel cable and coiled it on the deck. Thereafter Captain Pritchett ordered Kitchens to pull out another cable by himself. Captain Pritchett walked up to the wheelhouse and looked out the window immediately above where Kitchens was working and saw that Kitchens had started pulling out the second cable. While Kitchens was so doing, Captain Pritchett heard a yell and within two or three seconds ran down the steps to the deck and found Kitchens against the rail of the vessel and saw that the trousers on his right leg were torn and that blood was running out from the leg into his shoe. He asked Kitchens what had happened and Kitchens pointed to the cable, saying "It hit me." Captain Pritchett looked at the end of the cable and saw that the end was frayed, spread out and rusty, with pieces of flesh and blood on it. He ran up to his room to get Kitchens a slip to go to the doctor.

Captain Pritchett, Chief Engineer Walter Dick, Mate Landry and Captain DuBois all testified that on board vessels such as the Dispatch whenever a steel cable such as the one appellant was pulling from the paint locker had an end that was frayed and spread out, it was not left in that condition but was either seized, i.e., pulled together, and the frayed end cut off with a cold cutter, or was wrapped with burlap or other material for the purpose of preventing injury to any one handling such a line.

Shortly after his injury appellant was taken to Dr. McCary at Freeport, who put some dressing on his leg, after which appellant returned to the vessel on light duty for several days and thereafter attending his regular duties until some time in April of 1953 when the tug was laid up. Appellant then went to his home town to visit his family. Thereafter when he returned to his employer in order to inquire about re-employment, his employer looked at his leg and suggested that he go see the United States Public Health Service facilities, which he did and was by that facility transferred to the United States Marine Hospital where his condition was diagnosed as osteomyelitis.

■ It will be noted that by his points of error Nos. 1 to 4, inclusive, appellant has raised the law question asserting that there is no evidence to support the jury verdict with reference to the issues there complained of; and has further complained that in any event the answers of the jury to such issues are so against the overwhelming weight and preponderance of the evidence as to be clearly wrong. This latter complaint invokes the fact finding jurisdiction of this Court and requires an examination of the entire record for its proper determination. This Court has most carefully examined the entire record in this case and in doing so has reached certain conclusions which are in a large measure determinative not only of the particular points of error mentioned, but also of the entire appeal.

■ Upon the trial of this case, as well as upon this appeal, there appears to be no dispute between the litigants but that the appellant suffered an accidental injury to his right leg on January 14, 1953. Neither does there appear to be any serious question but that the accident occurred in substantially the manner testified to by appellant, as hereinabove described; however, only to the extent as such accident may have caused or aggravated a bone infection in appellant's leg, medically identified as osteomyelitis, is it material to the termination of this litigation. Separate and apart from its causal connection with the osteomyelitis, from which appellant present-

ly suffers, the injury resulting from the accident of January 14, 1953, is not the injury for which appellant seeks damages in this law suit. This is clear, not only from the issues joined by the written pleadings, but also from the evidence offered before the trial court. Apart from the osteomyelitis from which appellant now suffers there is no evidence in the record from which might properly be determined the extent and degree of any damage to appellant flowing from his injury. The wound inflicted in appellant's leg is not described in any detail in the evidence and while it no doubt was a painful flesh wound, it could not under any construction of the evidence, separate and apart from the osteomyelitis infection, have caused the disability for which appellant seeks damages. The evidence does show that immediately after treatment by Dr. McCary some two or three hours after the accident, appellant returned to his duties, being placed on light duty for two or three days and thereafter performing his regular duties. The inference is permissible that apart from the osteomyelitis infection appellant's wound would have healed without any disability prior to the time the tug Dispatch was laid up in April following his accident. The entire theory of appellant's law suit is that the accident which occurred on January 14, 1953, either caused or aggravated the osteomyelitis infection. It is upon this theory that the case was tried before the trial court. It is upon this theory that it was submitted to the jury, and it is in the light of this theory that appellant's points of error must be considered.

In view of what we have said relative to the nature of this law suit, it is manifest that its determination depends in large measure upon the evidentiary support or lack thereof for the jury's response to Special Issues Nos. 24, 25 and 26. For that reason, we consider it appropriate to first discuss appellant's point of error No. 4, hereinabove set forth.

The only evidence which we consider competent upon the issue of osteomyelitis is contained in the testimony of four medical doctors. Appellant places some reliance upon the testimony of lay witnesses who were appellant's fellow employees aboard the Dispatch. Their testimony is to the effect that they observed no evidence of infection in appellant's leg prior to the accident on January 14. We consider their evidence of little probative value for two reasons. It is not shown that any of such witnesses had any knowledge of the manner in which infection from osteomyelitis might manifest itself, and the medical evidence is uniformly to the effect that osteomyelitis might be present without any lesion in the skin or other visible evidence of its existence. To review the medical testimony at length would unduly extend this opinion. We think that the testimony of Dr. McCary is alone sufficient to support the verdict of the jury. Dr. McCary treated the wound inflicted in appellant's leg by the cable within two or three hours after the accident. From memoranda made at that time he testified to clinical signs of early osteomyelitis observed during such treatment. He testified that he advised appellant to report to the Marine Hospital and that he gave appellant a note to be delivered to the hospital stating "Eddie T. Kitchens has early osteo old injury left shin. He was given 600,000 units Abbottcillin and dressed with neomycin." Both Dr. McCary and Dr. Glassman, who was appellant's witness, testified that osteomyelitis, if traumatically caused would not be clinically evidenced until 24 to 48 hours after the injury which caused it. They further testified that if there was clinical evidence of osteomyelitis present at the time of Dr. McCary's treatment, the infection could not have been caused by the cable injury which occurred within the preceding two or three hours.

The record contains medical evidence which would support a conclusion different from that reached by the jury. It also contains evidence in addition to that of Dr. McCary which would support the jury verdict. No useful purpose would be served by setting it forth. We have carefully review-

ed the entire record. After so doing, we are of the opinion that the testimony of Dr. McCary above summarized, coupled with the undisputed evidence of the existence of an infected cavity in the tibia several months later supports the jury verdict and that we cannot say that that verdict is against the preponderance of the evidence. We, therefore, overrule appellant's point of error No. 4.

■ It will be noted that the jury found appellee negligent in two respects, namely, in failing to shear off or cold-cut the loose strands of wire from the cable and in failing to properly wrap the end of the cable. Neither failure, however, was found to be a proximate cause of appellant's injury. Such findings are the subject matter of appellant's points of error Nos. 1 to 3, inclusive, wherein he asserts first, that there is no evidence to support such findings, and second, that such findings are so against the overwhelming weight and preponderance of the evidence as to be clearly wrong. We overrule such points. No one witnessed the accident suffered by appellant. His description of it has been related above. While the evidence as stated is not detailed, it supports the conclusion that the cable striking appellant in the manner related inflicted a flesh wound in his right shin. Appellant contends that this wound was proximately caused by the failure of appellee to shear off or cold-cut or wrap the loose wires on the end of the cable. The evidence might well support such a conclusion, however it does not appear to this Court to compel such a conclusion. On the other hand, within the evidence in this record the jury might with equal support have concluded that the loose and frayed wires on the end of the cable had no causal connection with appellant's injury. So far as this record reflects, the injury might have been of the same or of greater degree had the cable been sheared off, cold-cut or wrapped. This we say aside from the causal connection or lack thereof between the injury inflicted by the cable and the osteomyelitis for which appellant seeks damages.

We think it too clear to permit of argument that if the record supports the jury verdict responsive to Issues Nos. 24, 25 and 26, and we say that it does, then appellant's points 1 to 3, inclusive, must be overruled.

We do not feel that the cases, St. Louis B. & M. Ry. Co. v. Little, Tex.Civ.App., 81 S.W.2d 122, and St. Louis S. F. & T. Ry. Co. v. Gibson, Tex.Civ.App., 211 S.W. 263, relied upon by appellant are applicable to the facts in this case. Those were cases in which a passenger fell while alighting from a train. In both cases the defendant asserted that the passenger's negligence in failing to look down and observe where he was stepping contributed to his injury. The jury in each case found that the passenger was negligent in failing to look down when stepping from the train, but found that this negligence was not a proximate cause of the accident. In both cases the appellate court held that such finding by the jury of no proximate cause was against the preponderance of the evidence. The quite logical reasoning upon which the courts in those cases based their conclusions is not applicable to this present accident; and in addition to that, under the theory of his law suit appellant must show a causal connection not only between the accident and the flesh wound to his leg, but also between the accident and the osteomyelitis infection. That he has failed to do, as the jury has determined by its answers to Issues Nos. 24, 25 and 26. Koslusky v. United States, 2 Cir., 208 F.2d 957.

■ What has been said relative to the theory upon which the appellant filed and tried this law suit bears upon the determination of his remaining points of error. The jury misconduct complained of in his points of error Nos. 5 and 6 was brought to the attention of the trial court in his amended motion for a new trial and may be summarized as follows: He complains that after the jury had retired they proceeded to answer the Special Issues submitted to them, answering Issues Nos. 1, 2 and 5. They were then unable to agree upon the answers to the remaining issues until they

reached Special Issues Nos. 24, 25 and 26. After answering Special Issues 24, 25 and 26 in the manner hereinabove set forth, the jury returned to Issue No. 6. One or more of the jurors are alleged to have stated to the remaining jurors that this Issue would have to be answered so that it would be in line with the jury's answers to Issues 24, 25 and 26 because by the term "injury" as used in Issue No. 6 the court meant "osteomyelitis" and since the jurors had already answered that appellant had osteomyelitis before January 14, 1953, and it was not aggravated by the injury of such date, there was no other way to answer Issue No. 6 except that appellee's negligence was not a proximate cause of appellant's osteomyelitis. Appellant asserts that it was because of this statement and for no other reason that certain of the jurors answered Issues Nos. 6, 11 and 28 as they did. The trial court, in overruling the motion for a new trial, held in so far as the alleged jury misconduct is concerned that such facts if proven do not as a matter of law constitute misconduct. In view of the nature of this law suit and the theory upon which it was tried, this Court feels compelled to overrule appellant's points 5 and 6. Rule 327, Texas Rules of Civil Procedure, provides that a trial court shall grant a new trial where the ground of the motion is misconduct of the jury " * * * if it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party."

Appellant does not impugn the jury verdict in so far as the answers to Special Issues 24, 25 and 26 are concerned, and in the light of the theory of appellant's law suit the jury's answers to those issues were determinative of his case, save and except only his right to maintenance which was determined by the jury's answer to Special Issue No. 27, and is not here in issue. Therefore, we cannot say, even if the matters complained of by appellant in his points Nos. 5 and 6, should under some circumstances constitute misconduct, that it reasonably appears from the record as a whole that injury probably resulted to appellant.

The essence of appellant's complaint of conflict in the jury verdict is set forth in the following quotation from his appellate brief: "Manifestly if his own negligence proximately caused his injuries to the extent of 33⅓ per cent, the negligence of someone else must have proximately caused his injuries to the extent of 66⅔ per cent. This must be so because the jury found that it was not an unavoidable accident. Obviously there cannot be an injury approximately caused 33⅓ per cent by the negligence of one person without there also being another 66⅔ per cent proximately caused by the negligence of another party and in this instance appellee. Here we have only two parties, one appellant and the other appellee, without any third party or any other intervening cause." Appellant further asserts that there is a conflict between the jury's finding in answer to Special Issue No. 1 that appellant suffered injury to his right leg and their answer to Issue No. 28 that he sustained no damages.

■ It has been repeatedly held that it is the duty of courts to construe verdicts as not irreconcilably conflicting when there is any reasonable explanation of seeming conflicts. For the purpose of possible reconciliation apparent conflicts should be examined in the light of the facts in the particular case, the pleadings and the evidence, the manner in which the issues were submitted and in view of the other findings when considered as a whole. Traders & General Insurance Co. v. Wilder, Tex.Civ. App., 186 S.W.2d 1011; Pruitt v. General Insurance Corporation, Tex.Civ.App., 265 S.W.2d 908.

■ As has been stated, there is no dispute between the litigants but that the appellant suffered an injury to his leg on January 14, 1953. However, when the pleadings, the evidence, and the manner in which the cause was submitted to the jury are examined as a whole, it becomes perfectly clear, as has been heretofore stated, that

the injury sustained by appellant as a result of the cable striking his leg is not the injury for which he seeks here to recover damages. His entire case is premised upon the proposition that the accident of January 14, 1953, caused or aggravated the osteomyelitis infection from which he suffers. The jury upon what we have determined to be sufficient evidence has determined that the accident did not cause the osteomyelitis. When the apparent conflicts in the jury's findings are considered in the light of such findings, they cease to be conflicts and are perfectly reconcilable.

■ While what has been said appears to this Court to adequately dispose of appellant's contentions, we feel that the following considerations should be mentioned. Appellant contends that the jury verdict in response to Special Issue No. 22 conflicts with the finding responsive to Special Issues Nos. 6 and 11. His argument in support of such contention which we have quoted above does not bear careful scrutiny. In order to sustain the argument made, it would be necessary to hold that the record in this case conclusively negatives the existence of any cause of appellant's accident other than those inquired about in Special Issues Nos. 6, 11 and 19. The record does not justify such a holding. It will be noted that appellant alleged acts of primary negligence proximately causing the accident other than those inquired about in Issues Nos. 6 and 11. In particular, we note the allegations that appellee failed to properly stow the cable in the locker and failed to properly coil the cable when stowed. Issues in support of such allegations were not submitted to the jury. However, the jury may well have concluded that the method of stowing, as well as the method of coiling the cable, may have been concurring causes of the accident; or, it is equally possible that the jury may have concluded that causes neither alleged nor inquired about may have concurred in causing the accident. We mention this because it has been held that it is not essential to recovery for negligent injury resulting from two concurring causes that both be negligence in him who puts them in operation. Missouri, K. & T. Ry. Co. of Texas v. Lasater, 53 Tex.Civ.App. 51, 115 S.W. 103.

Appellee defensively alleged numerous acts of contributory negligence on the part of appellant which proximately caused the accident. Except for the act inquired about in Issues Nos. 18 and 19, the jury exonerated appellant of contributory negligence; however, we cannot say that the jury may not under this record have concluded that such other acts on the part of appellant, though non-negligent, concurred in causing his accident. Argument analogous to that presented by appellant in this case was held to be without merit in the case of Benson v. Missouri, K. & T. R. Co., Tex.Civ.App., 200 S.W.2d 233, 238.

■ In addition to what we have already said relative to appellant's contention that there exists a conflict between the jury verdict responsive to Special Issues Nos. 1 and 28, we point out that in order to prevail in this cause appellant has the burden of proving and securing jury findings of negligence on the part of appellee proximately causing his injury. Absent such findings, the verdict would not support a judgment favorable to appellant regardless of the jury verdict responsive to the damage issue. Appellant contends that the finding that he suffered an injury necessarily requires a finding of damages, even though nominal. We have already pointed out that when examined in the light of the theory upon which appellant tried this cause, the conflict is apparent rather than real and can be readily reconciled. Without regard to that consideration, however, in Benson v. M. K. & T. R. Co., supra, the following language is employed: "Where special issues on negligence are answered against plaintiff, the general issue and answer on damages and related matters become immaterial." The law as there stated appears to us to be conclusively determinative of appellant's contentions. We, therefore, overrule Points Nos. 7 and 8.

After a careful consideration of the entire record presented, this Court is of the opinion that upon the verdict of the jury the trial court rendered the only proper judgment in this case and that judgment is accordingly affirmed.

Affirmed.

CODY, J., not sitting.