**B. C. EDWARDS, Appellant,**

v.

**HOUSTON TRANSIT COMPANY et al.,**
**Appellees.**

No. 3721.

Court of Civil Appeals of Texas.

Waco.

Dec. 29, 1960.

Rehearing Denied Jan. 19, 1961.

Jim S. Phelps, Houston, for appellant.

Baker, Botts, Andrews & Sheperd, Alvin M. Owsley, Jr., Houston, for appellees.

TIREY, Justice.

This is a negligence case. The jury, in its verdict, found substantially:

(1 and 2) That the bus driver failed to keep that lookout for cars ahead of him that an ordinary prudent person in the exercise of ordinary care would have kept under the same or similar circumstances, and that such failure was a proximate cause of the collision in question;

(3 and 4) That just prior to the collision in question the bus driver was following more closely behind the plaintiff's automobile than a person of ordinary prudence in the exercise of ordinary care would have done under the same or similar circumstances, and that such act was a proximate cause of the collision;

(5) That just prior to the collision in question the bus driver was not operating his bus at a greater rate of speed than a person of ordinary prudence in the exercise of ordinary care would have operated same in the exercise of ordinary care under the same or similar circumstances;

(7) That just prior to the collision in question the bus driver did not fail to make such application of the brakes on his bus as the ordinarily prudent person would have made in the exercise of ordinary care under the same or similar circumstances;

(10) That at the time and on the occasion in question B. C. Edwards did not drive his car at a greater rate of speed than a person of ordinary prudence in the exercise of ordinary care would have driven it under the same or similar circumstances;

(12) That at the time and just before the occurrence in question, B. C. Edwards' failure to swerve his car to the right was not negligence;

(14, 15, 16, 17) That at the time and on the occasion in question Edwards failed to keep such a lookout as a person of ordinary prudence in the exercise of ordinary care would have kept under the same or similar circumstances, and that such failure was a proximate cause of the collision, and that at the time and on the occasion in question Edwards brought his car to a stop more suddenly than a person of ordinary prudence in the exercise of ordinary care would have done under the same or similar circumstances, and that such action was a proximate cause of the collision;

(18) That at the time and on the occasion in question, B. C. Edwards did not slow his car more suddenly than a person of ordinary prudence in the exercise of ordinary care would have done under the same or similar circumstances;

(20) That at the time of and just before the occurrence in question, B. C. Edwards' failure to sound the horn on his car was not negligence;

(22) That at the time and on the occasion in question, B. C. Edwards' failure to give a hand signal of his intention to stop was not negligence;

(24) That at the time of and just before the occurrence in question, Donald Douglas was not acting in an emergency;

(27) That the accident was not unavoidable.

The jury fixed damages to plaintiff's car at $602.31, and the medical bills at $634.31, and assessed damages for personal injuries at $10,000. The Court overruled plaintiff's motion for judgment non obstante veredicto, and granted defendant's motion on the verdict and entered judgment that Edwards take nothing.

The judgment is assailed on what plaintiff designates as seven points. Points one, two, three and four are to the effect that the Court erred in failure to grant plaintiff's motion for judgment non obstante veredicto — (1 and 2) because there is no evidence of contributory negligence; (3 and 4) because the evidence is insufficient to sustain the finding of contributory negligence, and further that such finding is so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong. As heretofore pointed out the jury in its answer to special issue 14 found that plaintiff failed to keep a proper lookout, and further found that such failure was the proximate cause of the accident, and in answer to issue 16, found that plaintiff brought his car to a stop more suddenly than an ordinary prudent person would have done under the same or similar circumstances, and that such failure was a proximate cause of the accident.

■ Evidence was tendered to the effect that on the morning of July 2, 1957, an automobile driven by B. C. Edwards pulled onto Chocolate Bayou Road in the City of Houston and was traveling in a northerly direction; that in the lane of traffic behind plaintiff was a Houston Transit Company bus operated by Donald Gene Douglas,

a co-defendant herein; that at a point near the intersection of Chocolate Bayou Road and Ward Street, a dog ran onto Chocolate Bayou Road, traveling from the left to the right of the street as viewed from the position of the parties; that Edwards slammed on the brakes of his car, stopping his car in the lane of traffic immediately in front of the defendant's bus, and that the bus was following behind at a distance of about thirty-five to forty feet; that plaintiff's automobile and the bus were being operated within legal speed limits; that when plaintiff brought his automobile to a sudden stop, the bus hit the rear of plaintiff's car, causing personal injuries to the plaintiff and damages to the plaintiff's automobile. Four witnesses testified as to the accident, which forms a basis of this suit; they are, plaintiff Edwards, the bus driver Douglas, and two bus passengers, Bettye Knight and Audry Simon. Edwards testified to the effect that visibility was good on the day of the accident, and that he was well acquainted with the area; that he became aware of the dog's presence when it was near the center of the road about two car lengths ahead of him; the bus driver testified to the effect that he had seen the dog when it was on a walkway leading toward the road, and that the bus was thirty-five feet behind the plaintiff's car at the time; the bus driver also testified to the effect that he was to some extent occupied in operating the change box as he was driving the bus, but the fact remained that plaintiff was much closer to the dog than was the bus driver, and as we understand the testimony the driver of the car failed to discover the dog until it had reached the center of the road. The jury, after hearing the testimony of plaintiff, and the bus driver as to this factual situation, found that plaintiff failed to keep a proper lookout, and that such failure was the proximate cause of the accident. The plaintiff further testified to the effect that his foot was resting on the brake pedal prior to seeing the dog in the center of the road, and upon seeing the dog he applied his brakes "at first pretty suddenly," and that his brakes were in "near perfect" condition, and that "they stopped as quick as brakes could." Testimony is to the effect that the dog was only two car lengths away when Edwards first discovered his presence, and he stopped his car quick enough to avoid hitting the dog. The bus driver testified that Edwards made a "panic stop". It is true that plaintiff testified on trial:

"I applied my brakes and—at first pretty suddenly and then I slackened a little bit after I saw this wasn't a child.

"Q. * * * did you come to a complete stop or were you still moving, or do you know? A. Well, at first I wasn't sure, but I have been back out to the scene of this accident and I remember very distinctly the things that happened before the accident. Now, a lot of things that happened afterwards I wouldn't attempt to answer, but the things that happened just immediately before the accident I remember very distinctly, and I hadn't come to a complete stop."

The record shows that the accident happened on July 2, 1957; that on June 18, 1958, plaintiff's oral deposition was taken:

"Q. * * * 'you got up around Ward Street and saw something and put on your brakes rather suddenly and stopped?' And you answered, 'yes, sir', did you say that at that time? A. I said it, yes, sir, but it wasn't right.

* * * * * *

"A. I have been back out to the scene of the accident and a lot of things have come to me definitely; I remember the day, I never had given a deposition before and I remember the date distinctly, and also I remembered that right after the accident that I had told the policeman that I slowed to 2 to 5 miles an hour.

"Q. * * * 'Do you remember whether or not you laid down any skids, did your tires skid at all, do you recall?'

and at that time you answered, 'I guess I had as near perfect brakes as could be and they stopped as quick as brakes could stop.'?" And he answered "yes, sir."

"Q. Now is that right or wrong? A. They did not stop as quick as brakes could, but they will stop if you will apply them sufficiently.

"Q. * * * have you changed your mind on that subject also? A. No, sir, those brakes are still good, I keep them good. I have perfect brakes, in fact, I must have them because the company requires us to keep our car in good operating condition."

Since Edwards testified in his deposition to the effect that he put on his brakes rather suddenly and stopped, we cannot say that the jury issue of contributory negligence was not tendered. Our Supreme Court in Le Master v. Fort Worth Transit Co., 138 Tex. 512, 160 S.W.2d 224, 226, made this statement of the Rule:

"It is not possible for this Court to define to an absolute certainty the kind and quantity of evidence that is sufficient in law to show either negligence or contributory negligence. Every negligence case differs in some respects from every other negligence case. The trial court gave the usual charge defining ordinary care and negligence. The rule it that, if the evidence is conflicting, the jury must decide the conflict; and if the evidence is not conflicting, but reasonable minds might differ as to its effect, still a fact issue is presented."

Our view of the evidence is that when the foregoing rule is applied to the factual situation here that the issue of proper lookout and contributory negligence was tendered, and by reason thereof we would not be justified in overturning the jury's verdict in this behalf. See Eaglin v. Bailey, Tex. Civ.App., 306 S.W.2d 953, point 1.

Point 5 is to the effect that the court erred in entering judgment based upon the jury's finding that plaintiff stopped his car more suddenly than a prudent person would have done since the finding is in conflict with the jury's finding that plaintiff did not slow his car more suddenly than an ordinarily prudent person.

Point 6 is to the effect that the trial court erred in entering judgment based upon a jury finding that plaintiff stopped his car more suddenly than an ordinarily prudent person would have done, since this finding is in conflict with the jury's finding that at the time of and just before the collision that defendant, Donald Gene Douglas, was not acting in an emergency. We overrule each of these contentions.

First of all there was a conflict of testimony as to whether the plaintiff merely reduced his rate of speed immediately prior to the accident without coming to a complete stop, or whether the plaintiff brought his car to a complete stop. Because of the foregoing state of the evidence, issues were submitted inquiring whether plaintiff stopped too suddenly, or slowed too suddenly. Each issue inquired into a separate matter. The jury found that the plaintiff brought his car to a complete stop, and that in doing so, he stopped more suddenly than would an ordinarily prudent person. That is a finding of fact by the jury and we see no conflict here. In Pruitt v. General Ins. Corp., Tex.Civ.App., 265 S.W.2d 908, 910, n. r. e., we find this statement:

"It is the duty of courts to construe verdicts as not irreconcilably conflicting when there is any reasonable explanation of seeming conflicts. It will never be presumed that jurors intend to return conflicting answers, but the presumption is always to the contrary. Courts properly refuse to strike down answers on the ground of conflict if there is any reasonable basis upon which they may be reconciled." See also Kitchens v. Gulf States Marine

& Min. Co., Tex.Civ.App., 294 S.W.2d 193, n. r. e.; Smith v. Dye, Tex.Civ. App., 294 S.W.2d 452.

Moreover, we are of the view that the answers to special issues 16 and 24 are not in conflict. The issue inquiring whether defendant acted in an emergency is conditioned on finding that a condition of emergency arose suddenly and unexpectedly, and not proximately caused by any negligent act of defendant. The jury in its verdict answered issues 1 and 3 to the effect that defendant was negligent in failing to keep a proper lookout, and in following too closely, so the jury was justified in finding that the defendant was not acting in an emergency as same was defined in special issue No. 25. We see no fatal conflict in the jury's verdict.

Plaintiff, in his seventh point, says that the trial court erred in refusing to grant a new trial on the grounds of prejudicial jury misconduct. Appellant, on motion for new trial, presented testimony of two of the jurors, a Mr. Crooker and a Mrs. Allison. We have read their testimony very carefully and we cannot say that the trial court abused his discretion in overruling a motion for new trial and holding in effect that there was no misconduct for which appellant could complain that would justify a reversal. The testimony tendered by the two jurors was that when the jury retired to consider their verdict they first answered the issue inquiring into the amount of damages sustained by the plaintiff; then the jury proceeded with the other issues, first answering a portion of the issues inquiring into defendant's negligence, and then proceeded to answer the issues on contributory negligence. On issues 14 and 16, it seems that the jury was at first unable to agree. One juror indicated that he was convinced that the plaintiff failed to keep a proper lookout and stopped too suddenly, and that the issues in question should be answered affirmatively. Another juror expressed the opinion that the plaintiff had not been negligent in any respect. At that point one juror made comment that he would be unwilling to find against the defendant on the primary negligence issues unless the jury agreed with him that the plaintiff was negligent in failing to keep a proper lookout and in stopping too quickly. A discussion followed and Mr. Crooker stated to the other members of the jury that an affirmative answer to these issues would bar plaintiff's recovery. According to Mr. Crooker, either Mr. Golden or Mr. Tarrant expressed a contrary opinion—that the answer would make no difference, inasmuch as the damage issue had already been answered. According to Crooker's testimony the jury at one time was evenly split on the question as to the materiality of the answers. Mr. Crooker, on motion for new trial, testified in part:

"Q. * * * Was there any statement made by either Mr. Tarrant or Mr. Golden to the effect that after they had answered—had answered several of the questions finding the bus driver at fault, that they weren't going to find any more issues where Mr.—in other words, the bus driver was at fault, until first you had to get down there and find Mr. Edwards at fault? A. Yes, sir, there sure was.

"Q. Now, just tell me what was said when that discussion went on? A. Well, right back to the same thing. They thought the bus driver was at fault, but they also thought that Mr. Edwards was at fault, and if we had found the bus driver at fault we ought to find something to find Mr. Edwards at fault.

"Q. * * * there weren't going to be any more issues found against the bus driver until some issues were found against Mr. Edwards?

*   *   *   *   *   *

"A. Well they said, as I have said, I mean—that they thought Mr. Edwards was partly to blame for the acci-

dent in that it wasn't wholly the bus driver's fault, which I honestly thought then. * * *"

The record shows that plaintiff had each of the other jurors subpoenaed and they were all present sitting outside the courtroom, but none were called except Mr. Crooker and Mrs. Allison. The record does not show whether the jury was split evenly or otherwise at that point on the question of whether or not plaintiff had in fact failed to keep a proper lookout or stopped too suddenly. The jury eventually answered these issues in the affirmative. All the other issues were then answered, and the jury presented its verdict to the court.

It appears from the record that after the verdict of the jury was read, the court entered a "take nothing" judgment against plaintiff, and as the parties to the proceeding were leaving the courtroom, the jury learned that plaintiff had lost his case. Later that evening juror Crooker telephoned plaintiff's attorney and informed him of the fact about which plaintiff now contends constitutes misconduct requiring a reversal of the case.

We have, as stated above, carefully read this testimony, and no doubt, the trial court, after hearing Mr. Crooker's testimony, was of the view that Mr. Crooker was more concerned with reaching a verdict for plaintiff than in answering each issue upon the evidence submitted thereon. Mrs. Allison testified to the effect that there was pro and con discussion regarding the effect of the jury's answer to the "lookout" and "sudden stop" issues, and that statements were made by one or more jurors during the deliberation on those issues and that the answers thereto would be immaterial. She further testified to the effect that statements were made by one or more jurors that the answers to the issues in question were extremely material, in that affirmative answers to the issues would prevent plaintiff's recovery. It is true that Mrs. Allison in her testimony asserted that had she known at the time that affirmative answers would have prevented recovery by Edwards, she would have answered differently. The trial court may have decided that this view was the result of a desire for plaintiff to win, rather than the witness' true and honest opinion of the evidence.

The law in this state now is in order for a litigant to obtain a new trial on jury misconduct he must affirmatively show, first, that there was misconduct, and second that the misconduct resulted in probable injury to the losing party. Rule 327 Texas Rules of Civil Procedure. See also Trousdale v. Texas & N. O. R. Co., 154 Tex. 231, 276 S.W.2d 242. The trial court was of the view that after hearing each of the foregoing witnesses, and from a consideration of the record as a whole, that although there had been a discussion of the matters pro and con as to the effect of the jury's answers in their verdict, such testimony did not satisfy the trial judge that such misconduct had resulted in probable injury to the losing party, and he was of the view that plaintiff had not carried his burden under Rule 327 aforesaid. Also see Rules 434 and 503. This court is of the same view. See also Mrs. Baird's Bread Co. v. Hearn, 157 Tex. 159, 300 S.W.2d 646; Cloud v. Zellers, 158 Tex. 253, 309 S.W.2d 806; Texas Power & Light Co. v. Hering, 148 Tex. 350, 224 S.W.2d 191; Texas Employers' Ins. Ass'n v. McCaslin, Tex., 317 S.W.2d 916.

The judgment of the trial court is affirmed.