**James F. BURNETT, Sr., et al., Appellants,**

v.

**James T. HOWARD, Appellee.**

No. 15706.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

Jan. 21, 1971.

On Rehearing March 4, 1971.

Scott & Devlin, Robert G. Devlin, Houston, for appellants.

Gordon A. Holloway, Houston, for appellee; Sewell, Junell & Riggs, Houston, of counsel.

PEDEN, Justice.

Rear-end collision case. Mrs. Burnett, one of the appellants, was the driver of an automobile that was struck from the rear by one driven by Jas. T. Howard, the appellee, as both vehicles approached a red traffic signal light.

By its verdict the jury did not find any primary negligence on the part of Mr.

Howard but did find that Mrs. Burnett's contributory negligence proximately caused the accident. She, her husband and her son, who was a passenger in her car, have appealed from a take-nothing judgment entered on the jury verdict.

In response to special issues the jury did not find 1) that Howard failed to keep a proper lookout or 3) that he was following Mrs. Burnett's car closer than a person of ordinary prudence would have done in the exercise of ordinary care under the same or similar circumstances or 5) that he failed to timely apply his brakes. The jury did find 7) that immediately before the collision Mrs. Burnett slowed her vehicle abruptly, 8) that this was negligence, 9) and a proximate cause of the collision, 10) that she slowed her vehicle at a place in relation to the intersection where it would not have been slowed by a person of ordinary prudence, etc., and 11) this was a proximate cause of the collision. The findings of damages totalled $914. No issue was submitted to the jury to inquire as to whether Mrs. Burnett kept a proper lookout.

The appellants have conceded that their first point of error is not well taken. Their second and third points allege that the trial court erred in submitting the seventh and tenth special issues because Mrs. Burnett had no duty to do anything but what she did when faced with a red traffic signal. Their next points of error assert that each of the jury findings is so against the great weight of the evidence as to be clearly wrong. In deciding the latter points we must consider all the evidence. Garza v. Alviar, 395 S.W.2d 821 (Tex. Sup.1965). We look first to that which concerns liability.

The first witness to testify was Mr. Fagan, an officer in the Pasadena Police Department, who made an investigation of the accident. He did not see it happen but arrived immediately thereafter. He was shown to be qualified to testify as an expert concerning his investigation. He re-lated that the point of impact was on Spencer Highway about six feet north of its south curb line and about 78 feet west of its intersection with Burke Road. Spencer Highway has four traffic lanes and Burke Road has two. There are traffic control signal lights on overhead wires at the intersection. The cars were going east on Spencer Highway when Mr. Howard's car struck Mrs. Burnett's from the rear. Mr. Howard told Officer Fagan he was driving about 40 miles per hour, which is the speed limit there, and, based on what Mrs. Burnett told him, he believes she had slowed down to approximately 30 miles per hour, probably a little bit less. He measured 6 feet of skid marks for Mr. Howard's car before impact and 36 feet of skid marks after impact. Mrs. Burnett's car traveled 46 feet after the collision before ending up with its front end in a ditch. Mrs. Burnett's son, James, was in her car with her. The weather was clear and dry. To the drivers' right was only an open field.

The officer testified further that Mr. Howard told him at the scene of the collision that he hadn't seen the traffic light change or Mrs. Burnett slow down and he had run into the back of her car when she stopped. Mrs. Burnett had told him that she was slowing down to prepare to stop for the light and didn't know exactly what happened. He testified that he had determined the point of impact from the debris (dirt, metal and glass) on the street and the braking skid marks. He doesn't know whether Mrs. Burnett was going less than 30 miles per hour when she was struck. She told him that the light had turned red and she was stopping.

Appellant Mrs. Burnett testified on direct examination that she was driving east on Spencer Highway in Pasadena at about 2:30 P. M. when her car was struck from the rear as she approached the intersection at Burke Road. She was in the right-hand lane of the two lanes for east-bound traffic because she planned to turn to the right at the next intersection after Burke Road.

About two or three blocks before she got to Burke Road she was going about 30 miles per hour. The speed limit is 40 and she was a little late for a dental appointment, but she knows she was going 30 because she usually does.

No other vehicles were ahead of her or on either side of her as she approached Burke Road. She saw the traffic signal light at the intersection of Burke and Spencer turn red. As she was pushing down on the brake she heard a loud noise and the next thing she knew she was in a ditch. She didn't see the other car before it struck hers, and she didn't hear any horn or any brake noise. She estimated that her car was four car lengths away from the intersection when it was struck. At that time she was in the process of starting to slow down for the red light. The light had been green when she was a block away from it, and it had turned red just before she started applying her brakes.

When her car was struck she had "her foot on the brake, completely", and was going approximately five or ten miles per hour. She had power brakes. She still had her foot on the brake when her car stopped. She had been wearing sun glasses and after the impact they were found in the back seat of her car. The damage to her car was to the left rear part.

On cross-examination Mrs. Burnett testified that she didn't recall having seen the traffic light turn from green to yellow to red. When she saw that it was red she was around four car lengths or 75 feet away. She doesn't know how far she was when the accident occurred, but she was slowing down to either five or ten miles per hour and had just about stopped. She admitted having testified in her deposition that when she was hit she was probably going five miles per hour. She repeated in court that she was then almost stopped.

On re-direct examination Mrs. Burnett stated that she was making an ordinary stop for a red light when the accident happened. She said she didn't have to suddenly apply her brakes because she had plenty of room to stop; there were no cars ahead of her and there were no cars in back of her, as well as she can remember.

The appellee, Mr. Howard, testified on direct examination that the streets in question were level, straight and dry and there was nothing was nothing to obscure his vision. He remembered following Mrs. Burnett's car before the collision for at least half of a mile. He had looked at his speedometer, and when he was within about two blocks of Burke Road he was driving about 40 miles per hour, but he was not catching up to Mrs. Burnett.

He did not see her slow down. Something had caught his attention, and he had briefly turned his head to look. At that time the traffic light at Burke Road was green and he was following approximately two car lengths behind Mrs. Burnett's car. He said this would be less than fifty feet. He didn't see her start to apply her brakes; when he turned his head back to the road he saw that her brake lights were on. He was then too close to her to stop before striking her car. He doesn't think her car was at a complete stop when he hit it, but thinks it was moving very slowly. He started applying his brakes before the impact and tried to turn to the left. His car's right front struck the left rear part of her car and knocked it into a ditch.

He testified that he didn't know what color the traffic light was when he looked forward again. As far as he knows there was nothing unusual about the way Mrs. Burnett was stopping her car. He doesn't know because he didn't see her. He had time before the collision to apply his brakes and slow his car a little. He doesn't know how far he was behind her car when he turned his head forward again. He has no idea what it was that attracted his attention to his right before the collision. He looked over there no more than a second or two.

When he looked back he hit his brakes as hard as he could. There was nothing

wrong with them and they slowed his car considerably before the impact. He admitted that when he looked back ahead he didn't know how fast Mrs. Burnett was going and she could have been going 15 miles per hour or 10.

The other witness who testified as to liability facts was James Burnett, who was a passenger in his mother's car. He testified that his mother was driving at about 30, or maybe a little faster, before she applied her brakes. He had suggested that she speed up a little because they were late. He didn't see the other car before the impact. When they were a block away from the traffic light it was green, then it turned yellow and when they were a hundred feet or less from the intersection, it turned red. His mother was making a normal stop when they were hit. She didn't get almost to the light and then have to slam on her brakes.

The jury was entitled to believe, based on sufficient evidence, 1) that Mrs. Burnett slowed her car from about 30 or 40 miles per hour to about five miles per hour within an interval of time required for Mr. Howard's car to gain about two car lengths on hers and overtake it while his continued to travel at the same rate at which hers had been going, except for whatever decrease in his speed was occasioned by his having skidded for six feet just before the impact and 2) that her car was approximately four car lengths from the intersection when it was struck. She equated four car lengths with 75 feet. We consider that the proof of the facts just recited under item 1) supports the jury finding that Mrs. Burnett slowed her vehicle abruptly.

■ Can we say that the evidence summarized in the preceding paragraph is factually insufficient to support the jury finding that Mrs. Burnett's abrupt slowing constituted negligence? We think not.

■ Since the traffic signal required Mrs. Burnett to stop when she reached the intersection and her brake lights gave a signal that she was doing so, she could make an abrupt stop at that point without violating her duty to anyone behind her. Neill v. Baltazar, 345 S.W.2d 454 (Tex. Civ.App.1961, writ ref. n. r. e.); Kuykendall v. Doose, 260 S.W.2d 435 (Tex.Civ.App. 1953, writ ref. n. r. e.); Colom v. Vititow, 435 S.W.2d 187 (Tex.Civ.App.1968, writ ref. n. r. e.). How far back from the intersection does this privilege extend?

We have no direct evidence as to the distance required to bring Mrs. Burnett's 1965 Pontiac automobile to a stop from a speed of about 30 to 40 miles per hour, but it is obvious that some distance is required, so her duty to stop for the red light authorized her to commence braking her car before she reached the intersection. The only evidence in the record as to stopping distances under the prevailing conditions was that concerning Mr. Howard's vehicle. He testified that there was nothing wrong with the brakes on his 1958 Chevrolet, and Officer Fagan stated that it skidded six feet before impact and 36 feet after impact. How much farther he would have skidded had there been no collision is not in evidence.

The record supplies little information as to the distance needed to stop Mrs. Burnett's car. We look for assistance to a source we deem trustworthy, the Uniform Table of Driver Stopping Distances, which has been agreed on by ten national safety organizations. It shows that after application of brakes, a passenger car going 30 m. p. h. will stop in 48 feet and that one going 40 m. p. h. will stop in 90 feet. We conclude that under the evidence her duty to stop for the traffic light required her to apply her brakes at least 48 feet from the intersection. We have no finding of fact as to the speed of the two vehicles before the application of brakes, but the jury was entitled to decide that both were traveling at about 30 miles per hour and that she applied her brakes when she was approximately four car lengths from the intersec-

tion plus the distance she traveled while slowing from 30 to 5 miles per hour.

Since it was physically possible that Mr. Howard could have braked his car to a stop in 48 feet, he would not have struck Mrs. Burnett's car had he applied his brakes at a point 48 feet from the intersection plus the length of her car plus a foot or so and had she not applied her brakes before she needed to. The jury was entitled to conclude from the evidence that he applied his brakes farther than that from the intersection, so the evidence factually supports the jury finding that Mrs. Burnett's negligence in abruptly slowing was a proximate cause of the collision. The jury was also entitled to conclude from the evidence that Mrs. Burnett was negligent in slowing where she did, so she cannot rely on her duty to slow and stop for the traffic light to excuse her abrupt slowing at the place in question.

In Texas cases in which it is alleged that the driver of the lead vehicle abruptly or suddenly slowed it, the issues directed to his conduct usually inquire as to whether he kept a proper lookout, but in a few the sudden slowing issue has been submitted independent of the lookout issue. See Edwards v. Houston Transit Co., 342 S.W.2d 787 (Tex.Civ.App.1960, writ ref. n. r. e.) and Broussard v. Quebedeaux, 428 S.W.2d 115 (Tex.Civ.App.1968, no writ).

■ We do not consider that the failure of the lead driver to keep a proper lookout was essential to a contributory negligence holding in this case. Even if we did, we would be required to affirm the judgment of the trial court. The general rule in Texas as to lookout to the rear is that the lead driver has no duty to keep a lookout for traffic approaching from the rear unless the lead driver changes his lane or direction, stops or suddenly decelerates, in either of which cases he has a duty to keep a proper lookout to the rear and to give a proper signal of his intention. Jones v. Downey, 359 S.W.2d 116 (Tex.Civ.App. 1962, writ ref. n. r. e.), and cases there cited. "When one in a stream of traffic slows his vehicle, or stops it, or changes his course, a duty arises to see what is behind when he makes the change." Scott v. McElroy, 361 S.W.2d 432 (Tex.Civ.App. 1962, writ ref. n. r. e.). In both the Scott case and in Berry v. Sunshine Laundries & Dry Cleaning Corp., 387 S.W.2d 948 (Tex. Civ.App.1965, writ ref. n. r. e.) it was held that one who failed to keep a proper lookout to the rear when he made one of these changes was barred from a recovery on the ensuing collision if it was proximately caused by such failure.

■ We have noted that in our case we have no jury finding as to Mrs. Burnett's lookout. However, we find no objection by the appellants in the record to the failure of the trial court to submit an issue asking whether Mrs. Burnett failed to keep a proper lookout to the rear. Even if the evidence did not establish that she failed to keep any lookout to the rear it is clear that in this case there was sufficient evidence to support a finding that she failed to keep a proper lookout to the rear, and if we considered that the lookout issue was necessary to sustain a ground of defense, it would be but one of a series of such issues and its omission without objection or request would be deemed as found by the court in such manner as to support the judgment. Rule 279, Texas Rules of Civil Procedure.

For the reasons already stated we also overrule the appellants' second and third points of error, which assert that the trial court erred in submitting Special Issues 7 and 10 because, they say, Mrs. Burnett had no duty to do anything but what she did when faced with a red traffic signal light.

The appellants complain that Special Issue No. 7 constitutes a comment that Mrs. Burnett did abruptly slow her vehicle, arguing that there is no evidence that she did slow her vehicle abruptly. From our analysis of the evidence it is clear that we do not agree with this argument, and we overrule the point together with their "no evidence" points directed to each of the contributory negligence issues.

Having found that the evidence is factually sufficient to support the jury find-

ings of contributory negligence, we do not reach the appellants' points regarding the sufficiency of the evidence as to primary negligence or damages. Rule 434, Texas R.C.P.

Affirmed.

## On Motion for Rehearing

We withdraw the last paragraph of our opinion and substitute for it the following:

█ Mrs. Burnett's contributory negligence bars her recovery of damages and that of Mr. Burnett individually, but her negligence may not be imputed to her passenger, James Burnett, Jr., so the claim of James F. Burnett, Sr., as next friend of James Burnett, Jr. must be considered.

We hold that the jury's negative findings as to defendant Jas. T. Howard's 1) failure to keep a proper lookout and 3) having followed too closely were so contrary to the great weight and preponderance of the evidence as to be clearly wrong.

The judgment of the trial court is affirmed except as to the claim asserted by Jas. F. Burnett, Sr. as next friend of James Burnett, Jr., which is severed and is reversed and remanded.