**W. C. BURBA et al., Appellants,**

v.

**Gene LARY, Appellee.**

**No. 3400.**

Court of Civil Appeals of Texas.

Waco.

Nov. 28, 1956.

Rehearing Denied Jan. 3, 1957.

C. C. Renfro, Dallas, for appellants.

Willis & Willis, Gene Lary, Dallas, for appellee.

TIREY, Justice.

This is a suit in trespass to try title. The parties stipulated on the common source of title. The jury found substantially that (1) in the year 1934 the representatives of the Underwriters at Lloyds America did not make demand upon Darwin for the payment of the $1,500 note; (2) in the year 1938 the representatives of Underwriters at Lloyds America did not make demand upon Darwin for the payment of the $1,500 note. There was no request for any other issues and none was submitted. There were no exceptions to the court's charge. On the verdict of the jury the court granted judgment to appellee to the title to the real estate, and further decreed that appellee take neither title to nor possession of the house and improvements presently situated on the real estate, and decreed that appellants have the privilege of removing the house and improvements from the property within sixty days after judgment became final. Appellants seasonably excepted to the judgment and perfected their appeal to the Dallas Court of Civil Appeals and the case is before us on transfer order entered by our Supreme Court.

Appellants' first point is substantially that the court erred in rendering judgment in favor of appellee for the real estate because he failed to show a better title than appellants from the common source in that he did not obtain a favorable jury verdict

on any facts necessary to establish a good title from the common source, that is, that appellee did not obtain a finding that (a) he acquire legal title to the $1,500 note and deed of trust lien on the lot; (b) that the note was not barred by limitation when he acquired it; and (c) that the existence of facts authorized the appointment of his attorney as substitute trustee. Points 2 and 3 are to the effect that the evidence is insufficient to support the jury's findings to Special Issues 1 and 2.

A statement is necessary. On the 4th of January, 1929, W. H. Darwin executed his note in the principal sum of $1,500, payable to the order of R. M. Worley and Elliott Jones, attorneys-in-fact for the Underwriters at Lloyds America, such note bearing 6% interest per annum after maturity until paid, and being due and payable on demand after thirty days' notice. Contemporaneously therewith he executed a deed of trust lien on Lot 15, Block E, of Forest Highlands, an addition to the City of Dallas, Dallas County, Texas, the plat of such addition being recorded in Vol. 2, p. 253, of the May Records of Dallas County, Texas. On the 17th of March, 1939, the judge of the 53rd District Court of Travis County, Texas, entered an order granting receivership in behalf of the State of Texas against Lloyds America, and appointed Sam McCorkle of Dallas County, Texas, as receiver, and authorized the receiver to take charge immediately upon qualification as such receiver and fixed his bond at $15,000, and granted to him full power and authority to do any and all things necessary and incidental thereto, and "he is hereby empowered and authorized by this court to demand, receive and take charge of all the books, records, papers and any other kind or character of property belonging to the defendant or in the possession of the defendant, and to make such examinations, inquiries and reports and to bring such suits as may be necessary to the proper management of the affairs of said defendant and that he make such recommendation to this court, in order that this court may enter

such further orders as may be necessary for the purpose of recovering, receiving, preserving or disposing of any assets of any kind or character which may rightfully belong to the defendant." Said McCorkle duly qualified and took over the assets of said company. On April 7, 1939, the judge of the 53rd District Court entered an order authorizing the Board of Insurance Commissioners of the State of Texas, together with the Comptroller of the State of Texas and the Treasurer of the State of Texas, to turn over immediately and deliver to McCorkle, as receiver for the attorney-in-fact for the Underwriters at Lloyds America, certain described securities placed in the hands of the State Treasurer, through the Board of Insurance Commissioners, on the 18th of December, 1936. This order itemized the securities and among them is described "B–10–1 First Mtg. Note executed by W. H. Darwin, secured by deed of trust $1500.00." Exhibit B, attached to the order, describing mortgage loans, shows "Lot 15, Block 'E', Forest Highland, Dallas, Texas, (Date of Note) 1–4–29." On December 30, 1946, Sam McCorkle, the receiver, executed the following assignment:

"Know All Men By These Presents: That I, Sam McCorkle, Receiver for Lloyds America, duly appointed, qualified and acting under orders of the District Court of Travis County, Texas, in Cause No. 61546, styled, 'State of Texas v. Lloyds America et al.', for and in consideration of $100.00 cash to me in hand paid by Gene Lary of Dallas County, Texas, the receipt of which is hereby acknowledged, have transferred, assigned, sold and conveyed, and by these presents do transfer, assign, sell and convey, unto the said Gene Lary the following described shares of corporate stock belonging to the Estate of Lloyds America, to-wit: * * * (and then sets out specifically the stocks, giving the number of shares and certificate numbers, same not being pertinent to this discussion) together with all other shares of corporate

stock, stock certificates, and other securities of every kind and character owned by Lloyds America or in which the Estate of Lloyds America has any right, title, interest or claim, including those specifically listed and described above, and any and all others. And for the same consideration, I, Sam McCorkle, Receiver, for Lloyds America, have granted, sold and conveyed and by these presents do grant, sell and convey unto the said Gene Lary any and all other properties, assets, claims, choses in action, real estate and interests in real estate, wheresoever situated, and which Lloyds America owns, has a claim to, or has any right, title, and interest in; hereby fully transferring, assigning and conveying all remaining and undisposed of properties, real, personal and mixed, and wheresoever situated, of the said Lloyds America, unto the said Gene Lary.

"To have and to hold the same unto Gene Lary, his heirs and assigns, forever."

On May 7, 1954, Gene Lary, by instrument duly acknowledged, appointed J. Hart Willis substitute trustee, and in the instrument recites:

"Whereas, said Receiver did on January 15, 1940 file in said Cause No. 61546 his sworn 'Report of Receivership of Lloyds America as of December 31st 1939', wherein the above recited deed of trust and the note secured thereby were inventoried among the assets of said Lloyds America and the Receivership Estate, and which report was approved by order of the 53rd District Court entered January 15, 1940, in said cause; and

"Whereas, said Sam McCorkle, Receiver for Lloyds America, on December 30, 1946, pursuant to order of the 53rd District Court of Travis County, did sell, transfer, assign and convey unto Gene Lary the aforesaid deed of trust executed by W. H. Darwin, together with the note secured thereby, along with other assets and properties of Lloyds America; said assignment and conveyance from the receiver to Gene Lary being filed for record in Dallas County, Texas, to which reference is here made; and

"Whereas, Gene Lary has given notice and made demand for the payment of said note according to its terms; and more than 30 days have passed since the giving of notice and making of demand, and the note is now due and in default; and

"Whereas, said R. M. Worley is now deceased and Elliott Jones has moved from Dallas County, his present whereabouts are unknown, and he has failed to act;

"Now Therefore * * *,"

and the instrument proceeds to appoint J. Hart Willis trustee and requests him to sell the property to satisfy the indebtedness. The trustee proceeded to advertise said property for sale. Thereafter, on the 1st of June 1954, the said trustee struck off the property to Gene Lary for the sum of $1,506.25, and executed and delivered a Trustee's Deed thereto. (It is well settled that in the absence of proof to the contrary, the recitals in a trustee's deed make a prima facie case as a matter of law. See Matthews v. Rains Co., Tex.Civ.App., 206 S.W.2d 852, n. r. e., point 7, and cases there collated.) It appears that on January 4, 1929, Darwin executed in favor of Lloyds America one unsecured note for $30,000, and one note for $3,500, secured by certain property not involved here, and the note for $1,500, secured by deed of trust on the property involved in this suit. His testimony relating to appellant's alleged demand in 1934 was answered in the following manner:

"Interrogatory No. 12: If you have answered the preceding interrogatory in the affirmative, please state whether

or not any demand or request was ever made for you to pay said note, and, if so, the approximate date or dates thereof, and give such details with respect thereto as you now remember? A. It is rather difficult to remember details over such a long period of time, but in the summer of 1934, I was living at that time in Frio County and my ex-business partner from Dallas, Texas, sent to me a letter from the Lloyds America Insurance Company, as I remember at this time, asking me to contact them; that they wanted to see me. I made a trip to San Antonio and called at their office and the representative of the insurance company, I don't remember his name, told me that they were hard up for cash to operate on and wanted me to make some effort to pay my obligations to the company. I, at that time, told him that inasmuch as I had spent $5000.00 in cash with the company and had never received a nickel in return for my investment that I wasn't interested in putting any more money in the company and I declined definitely to do so. The foregoing statement that I have just made happened in the, approximately in the middle of the summer of the year 1934. About sixteen months thereafter I removed from that section of the state to Wise County, fifty miles northwest of Fort Worth, Texas, and in the year 1938, while living in Wise County, I received another letter from the insurance company of San Antonio, Texas, again asking me to help them out financially.

"Interrogatory No. 13: Please state whether or not you learned that a receiver was appointed by a district court in Texas to liquidate the affairs of Lloyds America? A. I did not, sir."

Appellee testified in part:

"A. I did buy the $1500.00 note along with some other assets that the receivership still owned. I bought all of the assets including some shares of stock and this note from the receiver, everything that the receiver had not previously disposed of during the course of the receivership and it was still on hand belonging to the receivership on December 30, 1946, including this note and mortgage, or deed of trust, I bought from the receiver, McCorkle, and he made the deed to me, which is Plaintiff's Exhibit No. 11.

"Q. And then what did you do after you received the conveyance of the property that you have just described, Mr. Lary? A. During the period of time I undertook to find out just what I had bought. At the time the receiver made the deed to me, the records of the receivership had been largely lost due to some moves of the office, the receivership offices had been moved—
* * *

"Q. What do you know? A. The records that the receiver turned over to me were incomplete, they were only a small portion of the original records, and as a result, I had to go to the records at the courthouse in Austin, to the public records, to make an investigation and search to ascertain what properties had come into the receivership and what had been disposed of by the receiver before he sold to me and which ones I acquired, and I made that search and investigation in the offices of the district clerk at Austin where the receivership had been pending, and also in the offices of the State Board of Insurance Commissioners at Austin, which supervises all insurance companies in Texas and has various records from them all. * * *

"Q. In your search of those records and all the other records that you had diligently sought, have you found that any suit was filed by Lloyd's America on the $1500.00 note with reference to any suit on this $30,000.00 note? A.

I made a very careful, thorough, diligent search of the records at Fort Worth, in Tarrant County, the records at Dallas, in Dallas County, and the records in San Antonio, in Bexar County, and I was unable to find any suit whatever brought by Lloyd's America against Darwin, except the suit for the $30,000.00 note, which is represented by the copy of the petition and judgment against Darwin in Exhibit 14 that was offered awhile ago. From the files and records of Lloyd's America that I have been able to locate, from all known available sources, letters, files and every bit of information and records of Lloyd's America that I have been able to find, I have found no trace whatever of any demand ever having been made on Darwin, other than the $30,000.00 note, and none for the $1500.00 note or the $3500.00 note. * * *

"Q. Now, I am asking you about the $1500.00 note. A. The $1500.00 note had been on deposit with the State Treasurer of the State of Texas as part of the insurance company's reserve that they had to keep in reserve with the State Treasurer; the Court ordered the State Treasurer to turn the note over to Mr. McCorkle, as receiver, after he was appointed, and there has been offered in evidence his receipt where McCorkle signed to the State Treasurer for the note, where the State Treasurer gave it to him after he was appointed."

Sam McCorkle testified by deposition and in part we find:

"Q. Now, I ask you if you remember anything about the mortgage note for $1500.00, secured by a lien of some sort on Lot 15, Block E of Forest Highland, Dallas, Texas? * * * A. I have no independent recollection of that particular piece of property, Mr. Renfro. There were numerous— as you will understand, there were nu-

merous pieces of real estate involved, and I certainly have no independent recollection of that particular lot. * *

"Q. Do you recall whether you made a demand on W. C. Burba to pay this $1500.00 note? A. I have no independent recollection of any such demand, Mr. Renfro * * *.

"Q. * * * Do you recall whether these attempts to collect these mortgage notes were by sending out some personal representative, or whether it was done by letter written by you, or turned over to an attorney to act for you to make collection? A. I recall this: That a Mr. Sorelle, and his initials I do not recall, at the time I was appointed receiver of Lloyd's America, he was an examiner for the State Department of Insurance, and was the examiner at the time of the examination by the State of Lloyd's America that had last occurred before it became insolvent—how long before, I do not remember. When I was appointed receiver I recall very well that I went from the courthouse direct to the Department of Insurance and asked them, asked the Board of Insurance Commissioners if I could secure the services of Mr. Sorelle, who was thoroughly familiar, due to the fact that he had examined it, of the estate and everything else about the company, secure his services, and they let me have him under an arrangement, I believe, where he stayed on the payroll of the State and I reimbursed the State for his services. Now, he acted as my comptroller, so to speak, in that receivership estate over there, over a period of several years, and we set up the procedure by which on notes and such matters as that that were receivables, and legal receivables of the estate, that we, wherever we found them, we put out a letter first. That is the only mechanics that I could, with any degree of convenience, follow, and demanded that they come in and pay us the money,

whatever it was, whether it was an account for premiums or an agent that owed the estate, or a note, or an underwriter's contract, whatever it was, we made demands on everybody, more or less, for our own protection.

"Q. Do you recall whether you made a demand on W. C. Burba to pay this $1500.00 note? A. I have no independent recollection of any such demand, Mr. Renfro."

Going back to the record, appellants made no written request for instructed verdict at the conclusion of the evidence, nor do we find that appellants made any objections or exceptions to the court's charge, nor did they request the submission of any special issues, nor did they file motion for judgment non obstante veredicto. As we understand appellants' position here it is to the effect that plaintiff failed to carry his burden of showing that he was the legal owner and holder of the $1,500 note and deed of trust lien securing same, and further failed to show that a demand had not been made for the payment of the note, and so failing, claims that a legal presumption prevails that the note was barred as a matter of law, since the receiver is presumed to have done his duty and made demand to collect all notes and accounts outstanding. In other words, it is appellants' position that appellee has failed to show thas appellee's title is superior to appellants.

 As a reviewing court, it is our duty to consider the evidence and the inferences properly to be drawn therefrom in the light most favorable to the party obtaining the verdict, and it is our duty in considering controverted issues of fact to accept as true that testimony which tends to support the verdict. 3–B Tex.Jur. pp. 370 and 372. Moreover, "Where the facts are controverted, or are such that different inferences may be reasonably drawn therefrom, an issue of fact is raised; it is only where the evidence is harmonious and consistent, and the circumstances permit of but one conclusion, that the question becomes one of law for the determination of the court. An issue of fact is raised 'if, discarding all adverse evidence, and giving credit to all evidence favorable to the plaintiff, and indulging every legitimate conclusion favorable to the plaintiff which might have been drawn from the facts proved, a jury might have found in favor of the plaintiff.'" (Citing cases.) See Olds v. Traylor, Tex.Civ.App., 180 S.W.2d 511, 514, points 8 and 9, writ ref. Moreover, "'It was the jury's province to weigh all of the evidence, to decide what credence should be given to the whole or to any part of the testimony of each witness. "The jury were the judges not only of the facts proved, but of the inferences to be drawn therefrom, provided such inferences were not unreasonable."'". See Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194, at page 199, point 6. See also Alexander v. Appell Drilling Co., Tex.Civ.App., 290 S.W.2d 377 (n. r. e.). No rule is better settled than the one to the effect that if there is evidence of probative value to sustain the findings of the jury, the appellate court is bound by such findings. See Lynch v. McLendon, Tex.Civ.App., 283 S.W.2d 88, point 3 (no writ history) and cases there collated.

 We are of the view that the evidence is sufficient to sustain the jury's verdict to the effect that no demand was made for the payment of the $1,500 note in 1934 and in 1938. We are of the further view that there is no evidence of any other demand being made for the payment of the $1,500 note from 1938 until it reached the hands of the receiver McCorkle. Did receiver McCorkle make, or cause to be made, written demand for the payment of the note before he transferred the assets in question to Gene Lary? We have previously set out the receiver's testimony pertinent to this matter. We have likewise set out the pertinent testimony of the maker of the note on this question. Darwin, the

maker of the note, testified in part: "Q. Please state whether or not you learned that a receiver was appointed by a district court in Texas to liquidate the affairs of Lloyds America? A. I did not, sir." But appellants contend that under all of the testimony tendered and the facts and circumstances, the legal presumption prevails that the receiver did make a written demand for the payment of the note. Assuming without deciding that such legal presumption did obtain, it is subject to rebuttal; and did not such presumption vanish under all of the facts and circumstances of the record here before us? We think it did. First of all, the maker of the note had not heard of the receivership. Going back to the receiver's testimony, he said in effect that he had no independent recollection of making any demand on the maker of the note for its payment. Moreover, there is no showing that any suit was filed on the $1,500 note; however, if we are mistaken in this behalf, we are of the view that the evidence does not conclusively show that the receiver made a demand on the maker of the note for its payment according to its terms, and that by reason of such demand having been made, that the note matured and that it became barred by our statute of limitations. Art. 5527, Vernon's Ann.Civil Statutes. It is our view under the record here made that appellants had the burden of tendering testimony tending to show that a demand had been made by the receiver or the insurance company for the payment of the $1,500 note, and the further burden of requesting the court to submit their plea of limitation to the jury, and this they wholly failed to do. See Rule 279, Texas Rules of Civil Procedure; also Wichita Falls & O. R. Co. v. Pepper, 134 Tex. 360, 135 S.W.2d 79; also Rules 94, 789 and 795, T.R.C.P. If appellants are correct in their views,

it was their duty to request the court to give an instructed verdict when the evidence was closed, and this they failed to do; nor did they file a motion for judgment non obstante veredicto and request the court to disregard the findings of the jury and enter a "take nothing" judgment against appellee. In this record we have a regular chain of title from the insurance company into the receiver. We also have a regular chain of title from the receiver into the appellee, because appellee acquired such title as the receivership had in the $1,500 note and the lien securing it, and he made demand for the payment of the note, and when the maker failed to pay the note he appointed a substitute trustee under the provisions of the deed of trust and requested such substitute trustee to foreclose his debt and lien and the substitute trustee proceeded to carry out this request and the appellee bought the property under the trustee's sale. Appellants seasonably pleaded the four year statute of limitations, Art. 5527, Vernon's Ann.Civ.Stats., but since they made no request to have such plea of limitation submitted to the jury, and also failed to object to the court's charge for not submitting such defense, we think they waived such plea and the defense that it presented, and that by reason thereof appellants' Points 1, 2 and 3 must fail, and they are overruled. See Wichita Falls & O. R. Co. v. Pepper, supra, and Rule 279, supra.

We have considered each of the other points assigned by appellants, and it is our view that they do not present reversible error and each is overruled.

Therefore, the judgment of the trial court is affirmed.

HALE, J., took no part in the consideration and disposition of this case.