**Charles W. SCOTT, Sr., Appellant,**

v.

**Edgar E. McELROY, Jr., Appellee.**

**No. 13925.**

Court of Civil Appeals of Texas.

San Antonio.

Sept. 19, 1962.

Rehearing Denied Oct. 31, 1962.

Pat Maloney, San Antonio, for appellant.

Hobart Huson, Jr., Chas. F. Nichols, San Antonio, for appellee.

POPE, Justice.

Charles W. Scott, Sr., plaintiff below, has appealed from a judgment upon a verdict which found that his nineteen-year-old son, Charles W. Scott, Jr., was contributorily negligent in an automobile collision by failing to keep a look-out, which negligence was a cause of the accident. Scott urges that (1) the findings about lookout have no support in the evidence, (2) are against the great weight of the evidence, and (3) the trial court improperly admitted evidence concerning the son's record and conduct as a student. We affirm the judgment.

Scott, with two friends, was driving north along Interstate Highway 35, on the night of November 13, 1960, in the vicinity of New Braunfels. The highway had two double lanes, one for northbound traffic and the other for southbound traffic. An esplanade separated the two lines of traffic. Scott was followed by a 1960 Ford, driven by Paul Schoenfield who also had two passengers. The six companions were returning to Houston after spending the week-end at a camp in Kerrville. A short time before the accident, and while on a feeder road, Scott stopped and inspected his car for trouble. He then drove onto the freeway. He was again followed by Schoenfield. Several hundred feet behind Schoenfield, McElroy was driving northbound. No other vehicles were involved or present before the accident, either northbound or southbound. Scott decided to again inspect his car, so he flashed his lights about five times and began to slow down gradually. As he slowed down, Schoenfield maintained an interval of about one hundred feet between his car and Scott's forward car. Schoenfield pulled to the right-hand paved shoulder and came to a stop. Scott saw Schoenfield through his rear-view mirror when he pulled to the shoulder, but Scott continued slowly down the highway. McElroy was the third car in the line of traffic, and he was about five hundred feet back of Schoenfield at the time Schoenfield stopped. He passed Schoenfield's Ford and drove into the rear of the Scott car. Both cars were demolished.

There was evidence which supports the findings that Scott "failed to keep such a lookout as a person of ordinary prudence in the exercise of ordinary care, would have kept under the same or similar circumstances," and that this was a proximate cause of the accident. The essence of Scott's argument of "no evidence" is his contention that he supplied all the testimony and McElroy did not testify. The fallacy of the contention, however, is found in the fact that Scott, in supplying all the evidence, supplied a considerable amount which

supported the jury's finding of his own negligence, and his friends corroborated it. We shall review some of those facts. All three drivers were, and knew that they were on a freeway. A freeway is a highway with controlled access which is intended for the elimination of most traffic stops, intersections, and other interferences with the flow of through traffic. Art. 1085a, Vernon's Tex.Civ.Stats. Before Scott decided to make the second investigation of his automobile, all three vehicles were moving at what was described as normal highway speed. Scott, the lead driver, then began to slow down. Schoenfield also slowed down, maintaining about the same distance between the two cars. Scott testified that he flashed his brake lights, and Schoenfield said he saw them. Schoenfield's car was between Scott's and McElroy's cars, and McElroy may or may not have seen the flashing lights. Schoenfield moved to the shoulder and stopped, but Scott, while continuing to slow down, stayed on the traveled part of the highway.

The point of impact was near the middle of the highway. An officer of the State Highway Patrol testified that the highway was forty feet wide with a center stripe. Scott's vehicle was struck on the left rear by the McElroy vehicle's right front light. He testified that the skid marks and debris fixed the point of impact in the right-hand lane about two feet to the right of the center stripe. This means that Scott, though coasting along slowly, remained well out in the line of traffic instead of pulling to the right or moving onto the paved shoulder which was available.

Scott testified about his own lookout. He looked in his rear-view mirror and saw Schoenfield pull to the shoulder. He said that he saw the lights of the McElroy car when it was 100 or 150 feet behind him. While this is testimony that Scott saw McElroy, this is the evidence which the jury in all probability decided was not a proper lookout. Schoenfield testified that he was 100 feet behind Scott, and that when he stopped, he looked and saw McElroy 500

feet farther back. The road was straight and "flat like a wide-open prairie." Lights were visible for great distances. The jury well could have concluded that Scott was watching his companion's car, but was oblivious to and indifferent about other overtaking traffic. Although Schoenfield saw McElroy 500 feet away, Scott said that he did not see him until he was 100 or 150 feet away. Scott was asked the direct question, whether he saw the McElroy car when he looked to see Schoenfield, who had stopped. He answered, "No." He was asked what he saw when he looked back, and he said he saw Schoenfield. He was asked, "And you saw no other car?" He again answered "No, sir." Scott therefore testified that he did not see the lights of the McElroy car until they were 100 or 150 feet away, though there was nothing between the Scott car and the McElroy car. The lights were there, and when Scott finally looked back for overtaking traffic it was too late for him to do anything about his situation.

This is a case of one who is moving along a freeway at night at highway speed and then slows down until he creeps along, as Scott himself testified, at a speed of five to ten miles an hour. This is not a case in which the lead driver slowed down or stopped because his travel was impeded by traffic, LeSage v. Smith, Tex.Civ.App., 145 S.W.2d 308; nor is it one in which the driver stopped in obedience to traffic signals or traffic controls. Kuykendall v. Doose, Tex.Civ.App., 260 S.W.2d 435; Bass v. Stockton, Tex.Civ.App., 236 S.W.2d 229. A lookout to the rear is not required in those cases, but LeSage v. Smith, supra, states the exception to that general rule. When one in a stream of traffic slows his vehicle, or stops it, or changes his course, a duty arises to see what is behind when he makes the change. Certainly that is the sound rule for speeding traffic along a freeway at night when speed and distance are more difficult to judge. Beasley v. Baker, Tex.Civ.App., 333 S.W.2d 212; Manning v. Block, Tex.Civ.App., 322 S.W.2d 651; Womacks v. Horne, Tex.Civ.App., 300 S.W.

2d 765; 60 C.J.S. Motor Vehicles § 90, p. 301. The authorities are collected and reasons for the rule are well stated in Mr. Chief Justice Murray's recent opinion, Jones v. Downey, Tex.Civ.App., 359 S.W. 2d 116.

■ There was evidence which supports the verdict. Applying the test stated by In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, and by looking at all the evidence, we can not say that the findings are so against the great weight of the evidence as to be manifestly unjust.

■ Scott's final point is that the court improperly admitted evidence about his son's behavior and record as a student and young man. Those matters were brought into the case by Scott, first by pleading and then by testimony. In any event, they did not affect the crucial findings about Scott's lookout.

The judgment is affirmed.

MURRAY, Chief Justice (dissenting).

I do not concur in the opinion of the majority and here state my reasons for dissent.

The undisputed, disinterested evidence in this case shows that Scott, Jr., was driving his car at a slow rate of speed straight down the right traffic lane of Interstate Highway 35, within the City Limits of New Braunfels, when he was struck from the rear by a car being driven by McElroy, Jr. This highway is divided and the east half, forty feet wide, is reserved for traffic going north. Thus it will be seen that there were some twenty-two feet of open, unobstructed, level and unoccupied paved highway to Scott's left where McElroy was required to pass. Sec. 54(a), Art. 6701d, Vernon's Tex. Civ.Stats. The right front light of McElroy's car struck the rear left light of Scott's car and it appears that if McElroy had turned his car only one or two feet to the left there would have been no collision. The only explanation given by McElroy for striking Scott's car was that he did not see it. The jury, of course, found McElroy

guilty of negligence which was a proximate cause of the collision. Which finding was fully supported by the evidence.

The jury found in answer to Questions Nos. 7 and 8, that Scott failed to keep a proper lookout, which was a proximate cause of the collision. This appeal turns upon the question of whether there was evidence to support these two findings.

The evidence shows, and the jury found in answer to Question No. 13, that Scott did not stop his automobile on the paved portion of the highway. And in answer to Question No. 11, they found that Scott did not decrease the speed of the automobile he was driving more suddenly than a person of ordinary prudence in the exercise of ordinary care would have done under the same or similar circumstances.

It is difficult to see how Scott's failure to keep a proper lookout could be a proximate cause of the collision when he did not stop or turn, and did not slow down his speed except in a careful manner, and gave due warning by flashing his rear lights, and especially in view of the fact that there were some twenty-two feet of pavement on his left, which McElroy was required by statute to use in passing the Scott car. Sec. 54, supra.

Scott did not violate Art. 6701d, § 68(a), because he did not turn his vehicle, nor did he violate § 68(c), because he did not stop or suddenly decrease the speed of his vehicle. This the evidence shows, and the jury so found. Scott did not, under the statute, owe the duty to give any signal, but he did give ample signals by flashing the rear lights.

McElroy's explanation for striking Scott's car, that he did not see him, only emphasizes the fact that Scott was not negligent. Scott was not found guilty of any act of negligence other than not keeping a proper lookout, which was of course a lookout to his rear. This collision happened at night. No one, other than Scott, knows whether or not he looked to his rear. Scott swore that he twice looked to his rear

before he began to slow down. He saw the lights of Schoenfield's car which was directly behind him. It is not surprising that he did not see the car behind Schoenfield's car, as the road was level and straight, but it is immaterial how many cars Scott saw to his rear, he at least saw one and thus knew that there was traffic behind him, and therefore he should be careful about reducing his speed. If he had seen McElroy's car it would have given him no further useful information than he already had. Knowing there was traffic behind him, he flashed his rear lights and reduced his speed just as gradually as he could. The warning he gave was sufficient for Schoenfield, who reduced his speed and pulled out on the shoulder of the highway. Scott again looked back and saw McElroy's car coming some 100 or 150 feet to his rear, but he had a right to assume McElroy would obey the law, Art. 6701d, § 54(a), and pass on his left. When Scott heard McElroy's brakes screeching immediately behind him, he realized there was going to be a collision, but it was then too late for him to do anything to avoid it.

The majority seem to rely on the fact that the jury was not required to believe Scott's evidence on lookout because he was an interested party. If this be true, the disbelief of the positive testimony of Scott that he did keep a proper lookout to his rear will not support a finding that he did not do so.

As was said by Justice Norvell, speaking for this Court in Dewhurst v. South Texas Rendering Co., Tex.Civ.App., 232 S.W.2d 135:

"After a careful examination of the statement of facts, we have come to the conclusion that there is *no evidence* supporting the jury's findings that Dewhurst was travelling at an excessive speed at the time of the collision or that he failed to keep a proper lookout. Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059. Appellants' motion for judgment should have been sustained.

"While the testimony of Munoz was not necessarily binding upon the jury, disbelief in his statement that the station wagon was moving slowly into the intersection is not evidence that the driver of the station wagon was travelling at an excessive rate of speed without maintaining a proper lookout. Testimony of a witness that an automobile was travelling at the rate of ten miles per hour at a certain time can not in itself be considered as testimony that the vehicle was travelling at the rate of sixty miles per hour. There must be something more than mere disbelief in the ten-mile per hour testimony to support a sixty-mile per hour finding. We do not agree with appellee's argument that the jury 'could have disregarded that portion of Munoz's testimony relating to the deceased slowing his automobile down as he was nearing the intersection and could have believed his testimony with reference to the rate of speed of forty or fifty miles an hour and used that as a factor in arriving at their verdict.' This argument involves a presumption of negligence."

The burden of proof was upon McElroy to show by a preponderance of the evidence that Scott was guilty of contributory negligence in that he did not keep a proper lookout to his rear. Dewhurst v. South Texas Rendering Co., supra; Rankin v. Nash-Texas Co., 129 Tex. 396, 105 S.W.2d 195; Hardage v. Rouly, Tex.Civ.App., 349 S.W. 2d 616; Texas & P. Ry. Co. v. Midkiff, Tex. Civ.App., 275 S.W.2d 841; Schneider v. Delavan, Tex.Civ.App., 118 S.W.2d 823; Texas Rules of Civil Procedure, Rule 94.

Scott is presumed to have been taking due care for his own safety unless it is shown by a preponderance of the evidence that he failed to keep a proper lookout to his rear. Rule 94, T.R.C.P.; Wood v. American Sec. Life Ins. Co., Tex.Civ.App., 304 S.W.2d 559; Burba v. Lary, Tex.Civ. App., 296 S.W.2d 797; Gieb v. Goebel Brewing Co., Tex.Civ.App., 176 S.W.2d 975; Garza v. De Leon, Tex.Civ.App., 193 S.W.

2d 844; 9C Blashfield, Cyclopedia of Automobile Law and Practice, § 6101, p. 38. The rule of res ipsa loquitur does not apply here because McElroy specifically alleged that Scott failed to keep a proper lookout, the burden was upon him to establish such fact by the evidence. In my opinion, the testimony of Scott to the effect that he kept a careful lookout to his rear, looking not only once but twice, can not be converted into evidence that he did not keep a proper lookout by the simple process of saying Scott was an interested witness and could be disbelieved by the jury.

In my opinion, the finding of the jury that Scott did not keep a proper lookout should have been disregarded by the trial court because it had no support in the evidence.

Even if there was some evidence to support the finding that Scott failed to keep a proper lookout to his rear, such failure in any event was not a proximate cause of the collision, because the undisputed evidence of the disinterested witness is to the effect that Scott was aware of the traffic approaching from his rear and flashed his stop light; that he did not stop, and did not suddenly decrease the speed of his vehicle; he did not turn to the right or to the left, but was struck from the rear by a motorist who did not see him. Under such circumstances, whether or not Scott looked to the rear is immaterial, and could not be a proximate cause of the collision. Furthermore, under all of the facts of this case, Scott did not owe any duty to keep a lookout to his rear, and owing no duty he was not guilty of negligence in not doing so.

In Solana v. Hill, Tex.Civ.App., 348 S.W. 2d 481, the Court said:

"Appellant says the court erred in disregarding the answers to issues five and six and in rendering judgment for Hill. As shown, the jury found that Hill did not stop on the highway and that he did not rapidly decrease his speed on the highway, as plaintiff alleged. The only finding of negligence

was that Hill failed to keep a proper lookout to the rear. The jury also found that such failure was a proximate cause of the collision of the cars behind Hill, driven by Earl Weber and Jordan. The court disregarded said findings upon the theory that, under the circumstances shown, as a matter of law, Hill had no duty to keep a lookout for cars travelling behind him. We think this was correct. * * * Appellant is contending, in effect, that because Hill was driving 30 to 40 miles per hour, instead of at the maximum speed permitted by law, he owed appellant the duty to keep a lookout to the rear. Hill, of course, had no duty to drive at the maximum rate. Hill had the right to drive in his right hand lane at the speed he was travelling and to assume that cars approaching from the rear would obey the law and use proper care to avoid injuring themselves. * * * In the absence of evidence of some fact that should have attracted Hill's attention to a situation that required a lookout to the rear, he had no duty to keep one. * * * Since there was no duty, there was no negligence in failing to keep a lookout to the rear. Furthermore, we think Hill's failure to keep such a lookout was, clearly, not a proximate cause of the collision of Earl Weber's and Jordan's cars. Le Sage v. Smith, Tex.Civ.App., 145 S.W.2d 308, 312, (Writ Dis., C.J.); Freeman v. Harkrider, Tex.Civ.App., 320 S.W.2d 238; Valley Film Service v. Cruz, Tex. Civ.App., 173 S.W.2d 952, (Ref. W.M.), and Mueller v. Bobbitt, Tex.Civ.App., 41 S.W.2d 466."

The cases of Le Sage v. Smith, Tex.Civ. App., 145 S.W.2d 308; Kuykendall v. Doose, Tex.Civ.App., 260 S.W.2d 435, and Bass v. Stockton, Tex.Civ.App., 236 S.W.2d 229, are not subject to the limitations attempted to be placed upon them by the majority.

The majority cite the cases of Beasley v. Baker, Tex.Civ.App., 333 S.W.2d 212; Manning v. Block, Tex.Civ.App., 322 S.W.

438

2d 651, and Womacks v. Horne, Tex.Civ. App., 300 S.W.2d 765.

The Womacks case was a collision at a street intersection, where the plaintiff was making a left-hand turn while the defendant was passing him. There are no similar facts here.

The most significant statement in Manning v. Block, supra, in my opinion, is the following:

"Split-second timing is not ordinarily required of operators of motor vehicles. Bass v. Stockton, Tex.Civ.App., 236 S.W.2d 229, 231. This would place an intolerable burden upon the average citizen. None but the most alert could safely venture on the highways. We have concluded that we cannot uphold the finding of the jury, under the circumstances obtaining, that Manning was negligent in having momentarily released his brake pedal preparatory to moving his car forward as the other car began its movement to enter Veatch Avenue. To do so would require a person to have the same ability to see, observe and react as readily to the circumstances of the road behind him as he is required to do ahead. This is physically impossible to do, and the law has rightly placed the burden on the car operator approaching from the rear, in event of a collision, to explain his action."

In Beasley v. Baker, supra, the Court held that plaintiff was required to keep a lookout to her rear when making a left-hand turn and changing from one traffic lane to another. Such is required by Sec. 68(a), Art. 6701d, Vernon's Tex.Civ.Stats. This is undoubtedly the law, but here there was no making of a left-hand turn, and no changing of traffic lanes. I think this case really supports the contention that here no lookout to the rear was required.

The majority seem to indicate that Scott, Jr., did not have a right to gradually slow down and ultimately pull onto the shoulder, even though his car was not functioning properly, because he was driving on a freeway. Undoubtedly Scott, Jr., had this right. Art. 6701d, § 68(c), reads as follows:

"No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is opportunity to give such signal."

Sec. 93(a) and (b), in effect, authorizes motor vehicles to reduce their speed and pull off the paved portion of a highway. I know of no different rule for vehicles being driven on a freeway.

Vol. 2A, Blashfield, Cyclopedia of Automobile Law, and Practice, § 1191, p. 2, reads as follows:

"Stopping or Parking in Street—In General

While motion is the general law of the road, this law is subject to limitations imposed by reason and necessity. In the absence of any governmental prohibition or restriction, the temporary stopping of an automobile on the proper side of the highway for a necessary purpose is not negligence; the right to stop when the occasion demands being an incident to the right to travel. However, there may be a want of care in parking a motor vehicle as well as in operating it. The test of liability is the reasonableness of the conduct under the circumstances. Weight should be given to the extent of interference with the free use of the road by others with equal rights.

"Due to the mechanical imperfections of the automobile, it is often necessary to stop at least partly on the traveled portion of the highway, if for no other purpose than that of making repairs. Because of this fact, it cannot be said as a matter of law that a driver who has been forced to stop in the traveled portion of the highway is negligent."

Blashfield cites many cases in support of this text.

The important lookout for a motorist on a highway is to his front and sides and not to his rear. Only on rare occasions is he required to keep a lookout to his rear. None of these rare occasions were shown to exist in this case. The driver of a motor vehicle is not required to follow the example set by the extinct dodo bird which is said to have habitually flown backward because he wanted to see where he had been but did not give a hoot as to where he was going.

In my opinion, there is no evidence more than a surmise or guess, to show that Scott, Jr., did not keep a proper lookout to his rear, and that such failure was a proximate cause of the collision. Therefore, the judgment of the trial court should be reversed and judgment here rendered in favor of Scott in the sum of $12,000.00, the amount of damages found by the jury.