Waunitta J. GRIFFITH et vir, Appellants,

v.

Jimmy Don HUDSPETH, Appellee.

No. 14244.

Court of Civil Appeals of Texas.

San Antonio.

April 1, 1964.

Rehearing Denied April 29, 1964.

Hobart Huson, Jr., San Antonio, for appellants.

Moursund, Ball & Bergstrom, San Antonio, for appellee.

BARROW, Justice.

This suit was brought by appellants, Waunitta J. Griffith and her husband, Harold M. Griffith, to recover damages incurred in a collision between an automobile operated by Mrs. Griffith and one operated by Jimmy Don Hudspeth. The jury found

primary negligence and damage issues favorable to appellants, but found that Mrs. Griffith failed to keep a proper lookout on the occasion in question and that this failure was a proximate cause of the collision. Appellants appeal from the take-nothing judgment entered on the jury verdict.

Appellants urge that there is no evidence to support the findings of contributory negligence of improper lookout or proximate cause. In the alternative, appellants urge that these findings are each so against the overwhelming preponderance of the evidence as to be clearly unjust. These points require a review of the evidence under the tests applicable to "no evidence" and "insufficient evidence" points. See "No Evidence" and "Insufficient Evidence" Points of Error, Calvert, 38 Texas Law Review 361.

This collision, although not a true intersectional accident, occurred in the City of San Antonio where Franklin Street joins the Austin Highway in a "T" intersection. It was assumed that the Austin Highway runs east and west for several hundred feet on either side of this intersection. There are two paved lanes and a paved shoulder for both east and west bound traffic, which are separated by an 18" island in the middle of the highway. Franklin Street enters the Austin Highway from the north and there is about a fifty-foot break in the center divider to permit Franklin Street traffic to turn to the east on entering Austin Highway. Rittiman Road intersects the Austin Highway about 500 feet east of Franklin Street, and traffic is controlled there by a traffic light. Several business establishments are located on the north frontage of the Austin Highway east of Franklin Street.

This collision occurred about 5:45 p.m. on December 8, 1961, at a time when the weather was very foggy and misty. The pavement was damp, but despite the murky conditions, visibility existed to points at least 500′ to the east from the scene of the collision. There were no street lights, but the headlights on both vehicles were burning at the time of the collision. Just prior to the collision Mrs. Griffith and her husband had driven from Rittiman Road onto the Austin Highway and then west to a radio shop located on the north side of the Highway, about 100′ east of Franklin Street. Mr. Griffith got out of the car and Mrs. Griffith proceeded alone. She drove onto the Austin Highway and angled across same in a southwesterly direction at a slow rate of speed, for a distance of 124′. She intended to make a "U" turn at the Franklin Street break in the highway divider and proceed east to Rittiman Road. She was unable to turn back to the east because of oncoming eastbound traffic, and therefore stopped her car partly in the westbound lane in which Mr. Hudspeth was proceeding and the collision occurred.

It was disputed as to how long Mrs. Griffith had been stopped before the collision occurred. She said that she had been stopped from thirty to sixty seconds. Mr. Griffith said at least thirty seconds. Mr. Hudspeth, on the other hand, testified to facts from which the jury could infer she stopped immediately prior to the collision. Mr. Hudspeth said that he first noticed her car pulling onto the Austin Highway at an angle when it was about 150′ from him, and that he assumed she was proceeding west. When he was about 25′ from her car, she turned to the left across his lane and stopped. He applied his brakes, as soon as she started across in front of him, but was unable to stop before hitting her car.

Appellants urge that there is not sufficient evidence to support the jury's findings of improper lookout, because the only testimony came from Mrs. Griffith, who stated she did look. She testified that she looked before starting onto the highway, while angling across, and after she stopped. She denied that she ever saw appellee's car before the collision. The physical facts demonstrate that there was nothing to prevent her from seeing his car at all times within at least 500′ from the point of im-

pact. Appellee was proceeding at 35 m.p.h., or 52.8 feet per second.

■ It is a settled rule that proper lookout is ordinarily a question for the jury. Texas & P. R. Co. v. Day, 145 Tex. 277, 197 S.W.2d 332. It was said by the Supreme Court in Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273:

> "In a case of this character, standards of ordinary care such as the direction and extent of the observation which Mrs. Ricketts should have made at any particular time cannot be fixed with any degree of certainty but must be left in large measure to the trier of fact. It is well settled, moreover, that negligence and causation, like any other ultimate fact, may be established by circumstantial as well as direct evidence."

The facts in this case present a situation very similar to that in Jones v. Downey, Tex.Civ.App., 359 S.W.2d 116, where Jones was struck from the rear when he stopped prior to making a left turn. This Court held that Jones was under a duty to keep a lookout to the rear under the rule which requires a motorist traveling upon a highway, who is preparing to stop, slow down, or change directions, to keep a proper lookout for traffic to the rear. It was there said: "He (Jones) was under no compulsion to stop, he could have continued in the direction in which he was going and avoided being struck in the rear, if he had kept a proper lookout to his rear." See also Scott v. McElroy, 361 S.W.2d 432; Womacks v. Horne, Tex.Civ.App., 300 S.W.2d 765.

■ The jury findings of improper lookout and proximate cause are supported by evidence. It is further our opinion, after reviewing all the evidence, that these findings are not so against the great weight of the evidence as to be manifestly unjust. Appellants' first point is overruled.

Appellants filed a motion for new trial in which they asserted that the jury was guilty of misconduct in that they discussed, considered, and were influenced by arguments, suggestions and extraneous observations made by some of the jurors which were not within the realm of the evidence. Affidavits from five of the jurors were attached to the motion for new trial.[1] The trial court sustained appellee's motion to strike the allegation of misconduct because same did not allege an act of jury misconduct and refused to hear testimony from any of the eight jurors who had been subpoenaed.

---

1. Summary of affidavits relating to discussion of Mrs. Griffith's lookout:

Juror Don A. Beere—A juror "suggested that Mrs. Griffith was not keeping a proper lookout because there was no evidence that she had ever seen Mr. Hudspeth after she had stopped in the middle of the highway." Further, there were other suggestions made, such as that she should not have been making a turn or driven where she did.

Juror Anslemo Garcia—He did not understand the charge, but thought Mrs. Griffith did not do anything wrong in driving her car.

Juror Herbert I. Hoffman—A juror suggested that Mrs. Griffith was not keeping a proper lookout because there was no evidence that she had ever seen Mr. Hudspeth after she had stopped in the middle of the highway. He considered the position of her car in Hudspeth's traffic lane required her to see him approaching although there was nothing she could do to evade.

Jury Foreman, Tom I. Mock—Following the initial vote on lookout, which was 6–6, the jury had considerable discussion as to the different factors affecting her lookout, such as the route she had taken, her attempting to make a "U" turn on a busy highway, and her placing herself, when stopped, in a precarious position on the wet highway.

Juror Norman I. Turner—One of the jurors raised the proposition that Mrs. Griffith, due to her precarious position in being stopped where she was, should have looked to her left as well as to the right. There was also discussion concerning the "U" turn.

Several jurors, in their affidavits, said they believed she was stopped for ten to fifteen seconds before the collision.

**156**

It is settled that Rule 327, Texas Rules of Civil Procedure, justifies no shotgun allegation as a basis for hailing jurors back to court and subjecting them to a searching inquisition in an effort to uncover suspected misconduct. McDonald, Texas Civil Practice, § 18.13. Therefore, unless the motion for new trial raises an issue of jury misconduct and the motion is supported by affidavit, or a reasonable excuse given for failure to do so, the trial court in its sound discretion may decline to hear testimony in support of the motion. Jones Lumber Co. v. Murphy, 139 Tex. 478, 163 S.W.2d 644; Zamora v. Zamora, Tex.Civ. App., 260 S.W.2d 604, wr. ref.

Appellants assert that the five affidavits raise two points: (1) During the discussion on the lookout issue, a juror stated that Mrs. Griffith did not keep a proper lookout because she never saw Hudspeth after she stopped; and (2) the jury discussed that she was in a precarious position. It is our opinion that these two matters do not constitute jury misconduct. Both of them were properly before the jury from the evidence. Mrs. Griffith admitted that she never saw Hudspeth before the collision. The issue inquired as to her lookout "on the occasion in question" which certainly included the time immediately before the collision. There were pictures of the scene in addition to the testimony of all witnesses that Mrs. Griffith was stopped partly in Hudspeth's lane of traffic preparatory to making a "U" turn. The jury could properly discuss these physical facts and conclude she was in a precarious position.

It is fundamental that the mental processes and motives of the jurors may not be probed. Putman v. Lazarus, 156 Tex. 154, 293 S.W.2d 493; Trousdale v. Texas & N. O. Ry. Co., Tex.Civ.App., 264 S.W.2d 489, aff. 154 Tex. 231, 276 S.W.2d 242; City of Houston v. Quinones, 142 Tex. 282, 177 S.W.2d 259. Erroneous ·logic is not misconduct. Juror's deductions, inferences from the evidence, and reasoning, though

faulty, illogical, arbitrary or bizarre, do not constitute misconduct. Trousdale v. Texas & N. O. Ry. Co., supra; Akers v. Epperson, 141 Tex. 189, 171 S.W.2d 483, 156 A.L.R. 1028. See also Pope, The Mental Operations of Jurors, 40 Texas Law Review 849.

The affidavits filed in this cause do not show any overt acts of misconduct and the trial court therefore did not abuse its discretion in refusing to hear testimony in support of the motion for new trial. Zamora v. Zamora, supra; General Acc. Fire & Life Assur. Corp. v. Murphy, Tex.Civ. App., 339 S.W.2d 392.

The judgment is affirmed.