**Carlton KERR et ux., Appellants,**

v.

**James Roy DILDINE, Appellee.**

**No. 11441.**

Court of Civil Appeals of Texas.

Austin.

Jan. 18, 1967.

Will Cowan, Austin, for appellants.

Brown, Sparks, Erwin, Maroney & Barber, Will G. Barber, Austin, for appellee.

HUGHES, Justice.

This is a suit for damages for personal injuries arising from the collision of a 1960 Renault Caravel coupe automobile operated by appellee, James Roy Dildine, and a 1957 Ford automobile being operated by appellant, Mrs. Winnie Kerr, wife of Carlton Kerr. The collision occurred about 2:30 p. m. Saturday, March 28, 1964, in the 1100 block of South Lamar Boulevard in the City of Austin, Texas. The collision of the cars was a rear end collision, the front of appellee's Renault coupe striking the rear end of appellants' 1957 Ford.

The trial was to a jury which made these findings: (1) Appellee failed to keep a proper lookout, and this was a proximate cause of the collision. (2) Appellee was negligent in failing to properly apply his brakes immediately before the collision, and this was a proximate cause of the collision. (3) Mrs. Kerr failed to keep "such lookout immediately before the collision made the basis of this suit that would have been kept by a person of ordinary prudence in the exercise of ordinary care under the same or similar circumstances," and that this failure was a proximate cause of the collision.

The jury exonerated the drivers of all other grounds of actionable negligence or contributory negligence submitted to it, and found that the collision was not the result of an unavoidable accident.

Damage issues were answered in sums totaling $2,000.00.

Appellants filed a motion asking the trial court to disregard the jury findings that Mrs. Kerr failed to keep a proper lookout and that this failure was a proximate cause of the collision. This motion was denied, and the court rendered judgment that appellants take nothing by their suit.

Appellants assign error in the action of the court in refusing to disregard the issues mentioned contending that there was no evidence to support the jury's answers to such issues.

The evidence in its vital features is remarkably clear from conflict.

Lamar Boulevard, where the collision occurred, is a straight, level and paved street. It has two northbound and two southbound traffic lanes, the pairs of lanes being divided by a double yellow stripe. The two inside lanes are 12 feet wide and the two outside lanes are 18 feet wide.

To the west of Lamar Boulevard, in the 1100 block is Lamar Plaza Shopping Center. It has several entrance and exit driveways to and from Lamar Boulevard on the west side of the street.

South Lamar is a "busy" street. The speed limit on it is 35 m. p. h. in the 1100 block. The day of the collision, the weather was clear, and the streets were dry.

At the time of the collision, Mrs. Kerr was driving alone enroute to shop at a department store in Lamar Plaza Shopping Center. She was driving north on the inside traffic lane intending to turn left across the southbound lanes and into a shopping center entrance. She had entered the shopping center in this manner on many occasions.

Mrs. Kerr was driving about thirty miles an hour as she approached the shopping center. She reduced her speed in traveling "for quite some distance" to five miles an hour and turned on her left turn blinker signal. While thus proceeding and while looking for a break in the double center stripe, she was hit by appellee's car approaching from the rear.

The point of impact of the cars was in the inside traffic lane of the northbound traffic lanes, the lane in which Mrs. Kerr had been traveling, and a short distance beyond, or north, of the last break in the double stripe before the next street intersection.

Mrs. Kerr's Ford was equipped with three rear view mirrors, but she did not look in any of these before commencing to slow down or immediately prior to the collision. Neither did Mrs. Kerr give any hand signal of her intention to slow down. Mrs. Kerr could not remember whether she applied the brakes in slowing her car.

Mrs. Kerr had not commenced her turn before the collision occurred. At this time there were no cars approaching from the north and no northbound cars in front of or to her right side.

We quote appellee's version of the manner in which the collision occurred:

"Q You were proceeding in what direction on—South Lamar?

A In a northerly direction.

Q Now, before the accident occurred, did you see the car being driven by Mrs. Kerr?

A Yes, sir, I did.

Q Was it in the same lane of traffic that you were traveling?

A Yes, it was.

Q Now, as it approached the intersection there of South Lamar and West Gibson, where there is a break in the two double yellow lines, what, if anything, did the Kerr car do?

A She slowed down, to me (sic.), as if she was going to make a left turn, but instead of coming to a complete stop, she kept going. I then looked to the right, and saw that a car was on my right. I had intended to pass to the right, but by the time I looked back around it was too late.

Q When you looked to the right there was a car immediately to your right?

A Just to the right and a little behind.

Q Close enough to prevent you from turning out in the outside lane?

A Yes.

Q And when you looked around and saw her again, what happened?

A Then there was the collision. I applied my brakes then.

  *   *   *   *   *   *

Q Mr. Dildine, about how far were you from the Kerr vehicle when you first noticed that the other vehicle was decreasing its speed?

A I would say—it would be hard to guess, but I would say approximately about two to three car lengths.

Q Well, Mr. Dildine, let's go back. Do you recall on October 4, 1965, and shortly thereafter, some interrogatories were submitted to you for answers?

A I remember the questions and so forth, but not the date.

Q Well, do you remember—this is No. 112. Questions No. 113 and 112: 'Did you notice Plaintiff's vehicle reducing speed prior to the accident?' And your answer was 'Yes?'

A Yes, definitely so.

Q Is that true?

A Yes, sir.

Q And the answer to No. 113, the question was: 'If so, state how far you were from the other vehicle when you first noticed the reason for the other vehicle's decrease in speed.'

A I said about two to three car lengths, to the best of my recollection.

Q Well, now, the answer you gave at that time in your interrogatories was 150 feet, Mr. Dildine.

A Well, it is pretty hard to estimate that distance when you are travelling along like that, because I was not paying any attention whatsoever to the distance.

Q Well, at that time the answer was made under oath, and the answer was 150 feet. Now, is that correct?

A I would hate to say, I mean, because, like I say, it is hard to estimate the distance, because, I mean, I don't know, really. You can cover a whole lot more ground than you actually realize, unless it is for certain that you do know.

Q Well, Mr. Dildine, let me put it to you this way. These answers were filed, the original was filed in this Court, dated October 19, 1965, and at that time the answer under oath made by you—

A Yes, sir.

Q —through your attorney was 150 feet;—

A Approximately.

Q —is that true?

A That is an approximation, yes, if I gave it, but, like I say, I don't remember now at the time giving it. If I gave it at that date, then, that is correct.

Q If that is what the answer was on that date, then, that was true?

A Yes, sir, approximately so.

Q Now, from the time you first observed this automobile 150 feet in front of you, did you have the Plaintiff's vehicle in your observation all of the time from the time that you

first observed it up until the moment of impact?

A No, sir.

Q If you did not, state why not.

A Because, as I have said previously, I did turn and look to the right to see if there were any cars coming so that I could pass around to the right side.

Q All right. At that time were you travelling about 25 miles an hour?

A Yes, sir, approximately so.

Q And you did notice the Plaintiff's vehicle reducing speed prior to the accident?

A Yes, sir.

Q And No. 113 again: 'If she did, state how far you were from the other vehicle when you first noticed the other vehicle decreasing speed.' Your answer was '150 feet;' is that correct?

A Yes, sir.

Q You skidded some 15 to 18 feet?

A Yes, sir.

Q At the same time in these interrogatories, in answer to 124, in answer to the question: 'For what distance did you have a clear view as you approached the scene of the accident?' Your answer was: 'A long ways;' is that right?

A Yes, sir, I believe so. Now, I mean, I wouldn't state it as a fact.

Q If that's what your answer was under oath on October 19, 1965—

A Yes, sir.

Q —then, that is still true?

A Yes, sir."

There is evidence to the effect that appellee's car would have stopped in a few more feet from application of its brakes and that if Mrs. Kerr had accelerated her car and moved these few feet the collision would not have occurred.

■ It is our opinion that the trial court erred in not granting appellants' motion to disregard the jury findings of negligence and proximate cause relating to Mrs. Kerr's failure to keep a proper lookout.

Mrs. Kerr's operation of her Ford was proper and legal in every respect. She did nothing and attemped to do nothing which she did not have a legal right to do or attempt to do. She was going to the Lamar Plaza Shopping Center where she had gone many times before. She was on the inside lane, the proper lane from which to make a left turn. She was traveling at a moderate rate of speed, thirty miles an hour, but even so it was necessary that she reduce this speed in order to safely turn left at a break in the double stripe or at the next street intersection. She turned on her left blinker light, slowed her Ford to five miles an hour and before she could turn she was hit by appellee's car from the back. Appellee also was traveling at a moderate speed, 25 miles an hour, and had observed Mrs. Kerr slowing her car while 150 feet back of it. All that appellee had to do to avoid the collision was to reduce the speed of his car, but instead he looked off to see if he could switch lanes. When he looked back, it was too late to avoid the collision.

■ True, Mrs. Kerr did not look in her rear view mirrors. Suppose she had. She would have seen a car 150 feet behind her traveling at 25 miles per hour when she began to slow her car and give her left turn signal. This view would have assured her that she could make the left turn with safety as there was nothing in this view that would cause her alarm or call for any action on her part different from what her actions showed she intended. She certainly would not be held to anticipate that the driver of such car was going to look off and not slow his car until it was too late to avoid hitting her.

If it is to be held that drivers of automobiles cannot exercise their right of turning left under the circumstances of this case without committing an act of negligence based solely on the fact that a car is approaching from behind at a safe distance and at a reasonable speed, then left turns can rarely be made by a prudent driver who would not knowingly commit a negligent act because in cities such as Austin there is almost *always* a car behind, usually much nearer than 150 feet.

■ Appellee concedes the general rule to be that a driver has no duty to keep a lookout to the rear, but he contends that there is an exception to this rule which is applicable here, the exception being that if the driver intends to slow down, stop or change directions, it is his duty to look to the rear and observe approaching traffic from that direction. He cites as directly applicable to this case Berry v. Sunshine Laundries and Dry Cleaning Corp., 387 S. W.2d 948, San Antonio, writ ref., n.r.e.

In Berry plaintiff's car was stopped behind a lead car which turned left into a private driveway in the middle of a block. Plaintiff intended to make the same left turn and was giving signal to this effect when he was struck from the rear by defendant's truck. The jury found plaintiff guilty of contributory negligence in not keeping a proper lookout, and this finding was sustained by the Appellate Courts. The driver of defendant's truck testified that when he first saw plaintiff's car he was going 20–25 miles per hour and was only eighteen feet behind it. The jury found he, defendant, was guilty of failing to keep a proper lookout.

The opinion does not reflect whether a left turn in the middle of the block was authorized or not. Here the record is that a left turn was authorized. In Berry the car hit was stopped. Here the car was moving. In Berry the car hit was not observed until too late to stop. The contrary appears here.

Our conclusion is that Berry is not controlling, there being material factual differences between it and this case.

We sustain appellants' points that the jury's answers to the issues relating to the failure of Mrs. Kerr to keep a proper lookout are without evidence to support them, and that the trial court erred in not granting appellants' motion to disregard them.

Appellants also have points to the effect that the jury findings which we have held to be without evidentiary support are so against the overwhelming weight and preponderance of the evidence as to be manifestly unjust. We would sustain these points if required to pass on them.

The judgment of the trial court is reversed and judgment is here rendered for appellants against appellee for the sum of $2,000.00 with 6% interest thereon per annum until paid from March 24, 1966, date of trial court's take nothing judgment, together with all costs of suit in this behalf expended or incurred.

Reversed and rendered.