**YELLOW CAB COMPANY, Appellant,**

v.

**Rachel DAVILA et vir, Appellees.**

**No. 8053.**

Court of Civil Appeals of Texas,
Amarillo.

April 27, 1970.

Rehearing Denied May 25, 1970.

Key, Carr, Evans & Fouts, and Donald
M. Hunt, Lubbock, for appellant.

Morehead, Sharp, Tisdel & Gibbins,
Stovall & Stovall and Suzanne Stovall,
Plainview, for appellees.

NORTHCUTT, Justice.

This is a rear-end automobile collision
case. Rachel Davila, as plaintiff, joined by
her husband sued Mildred Hancock who
rear-ended the Yellow Cab in which Mrs.
Davila was riding, and Yellow Cab for
personal injuries which she sustained.
Prior to the trial, the plaintiffs settled one-
half of their cause of action for $4,250.00
with the Hancock defendants by settlement
agreement and covenant not to sue. Plain-
tiffs proceeded only against Yellow Cab
which joined Mildred Hancock and her
husband as third party defendants for con-
tribution and indemnity.

The case was tried to a jury which found
that both Yellow Cab's driver and Mrs.
Hancock, by their negligence, caused the
injuries to Rachel Davila. Damages in the
amount of $16,267.47 were found and judg-
ment for one-half of that amount was ren-
dered only against Yellow Cab. From that
judgment, Yellow Cab has perfected this
appeal. Yellow Cab will hereafter be re-
ferred to as appellant and Rachel Davila as
appellee.

By appellant's first assignment of error
it is contended the court erred in rendering
judgment for the plaintiffs on the jury's
finding that Fugett failed to keep a proper
lookout to the rear. We are concerned
only with the findings of the jury as to the
negligence of appellant. Concerning the
negligence of the driver of the Yellow Cab
in failing to keep a proper lookout for
vehicles approaching from his rear, the fol-
lowing issues were propounded to the jury
as follows:

"SPECIAL ISSUE NO. 5: Do you find
from a preponderance of the evidence
that the taxicab driver, Joel Fugett, at
the time or just prior to the collision
failed to keep such a lookout for vehicles
approaching from his rear as a person

of ordinary care would have kept under the same or similar circumstances?

ANSWER 'YES' OR 'NO'

ANSWER: Yes

If you have answered the above and foregoing special issue 'Yes', and only in that event, then answer the following special issue:

SPECIAL ISSUE NO. 6: Do you find from a preponderance of the evidence that such failure if you have so found, was a proximate cause of the collision in question?

ANSWER 'YES' OR 'NO'

ANSWER: Yes."

■ As we view the above findings of the jury, they are immaterial findings because, as a matter of law, Fugett, under this record, had no duty to keep a lookout for cars approaching from his rear. In considering the view here taken, it is necessary to show the evidence leading to the final accident. As Fugett proceeded south on Columbia, he stopped for a red light on 11th and Columbia, and when the light changed, he proceeded south at a speed of approximately 25 mph. By the time Mrs. Hancock arrived at the intersection of 11th and Columbia, the light was green but the light at Tenth Street was red. The taxicab was not immediately in front of Mrs. Hancock as she went through the intersection of 11th and Columbia and she proceeded south toward Tenth and Columbia at a speed of 20–25 mph. The light at Tenth and Columbia remained red until Mrs. Hancock was approximately two-thirds of the way down the block at which time Mrs. Hancock said the taxicab was still considerably in front of her and presented no immediate hazard. As Fugett approached the intersection of Tenth and Columbia, the light was red. It changed to green just as he got there. Mrs. Davila, as well as Fugett, was positive that Fugett stopped or slowed in response to a red light at Tenth and Columbia. Mrs. Davila testified that as the taxicab approached Tenth Street, the light was red and if Fugett had not stopped, he would have run a red light, and after stopping in response to the red light he then started immediately forward as the light had changed by the time he stopped.

The special issues, supra, involve the duty of Fugett to keep a lookout for vehicles approaching from his rear and his duty to give visible signal of intention to decrease his speed. In the absence of some fact that should have attracted appellant's attention to a situation that required a lookout to the rear, he would have no duty to keep one. There is nothing in the nature of the situation shown that required appellant to watch cars to the rear.

■ It seems to be the general rule in Texas the lead driver is under no duty to keep a lookout for traffic which approaches from the rear. Kerr v. Dildine, Tex.Civ. App., 410 S.W.2d 808 (n. w. h.); Jones v. Downey, Tex.Civ.App., 359 S.W.2d 116 (n. r. e.); Solana v. Hill, Tex.Civ.App., 348 S.W.2d 481 (n. r. e.); Kuykendall v. Doose, Tex.Civ.App., 260 S.W.2d 435 (n. r. e.); Bass v. Stockton, Tex.Civ.App., 236 S.W.2d 229; Le Sage v. Smith, Tex. Civ.App., 145 S.W.2d 308 (writ dism'd, judge. corr.). The exception to the general rule is that a duty to look to the rear arises when the lead driver does something such as changing his lane or direction, stopping or suddenly decelerating. Art. 6701d, Sec. 68, Vernon's Ann.Texas Civil Statutes, Berry v. Sunshine Laundries and Dry Cleaning Corp., Tex.Civ.App., 387 S.W.2d 948 (n. r. e.); Riles v. Reichardt, Tex.Civ. App., 366 S.W.2d 655; Scott v. McElroy, Tex.Civ.App., 361 S.W.2d 432 (n. r. e.); Colom v. Vititow, Tex.Civ.App., 435 S.W. 2d 187 (n. r. e.). The answer to the special issues, supra, deals solely with the question of proper lookout by the driver of the taxicab for vehicles approaching from the rear of the taxicab. Under this record, we hold there was no duty on the part of Fugett to keep a lookout for vehicles approaching from his rear. We sustain appellant's first assignment of error.

This case has been submitted in a rather peculiar manner. The suit was first brought against appellant and Mrs. Hancock in which it is clearly pleaded that Mrs. Hancock was the party causing the damage, and the only thing alleged against Yellow Cab was failure to give proper signal indicating intention to turn to the left and failure to keep proper lookout. After a settlement of the damages was made with Mrs. Hancock and the case proceeded against Yellow Cab only, the plaintiff pleaded the driver of the cab guilty of negligence as follows:

"Plaintiffs would show that at the time and immediately prior to the collision, the driver of the taxicab, Joel Fugett, failed to use ordinary care and was negligent in the following respects, to-wit:

(1) In stopping the taxicab without first giving the appropriate signal of his intention to do so in violation of Article 6701d, Sec. 68, (C), RCS, and in this respect, he was negligent as a matter of law.

(2) In suddenly decreasing the speed of the taxicab without first giving an appropriate signal of his intention to do so.

(3) In failing to keep a proper lookout.

(4) In attempting to make a left-hand turn at the intersection of 10th Street and Columbia Street without giving a signal of his intention to make a left-hand turn on 10th Street for a distance of at least 100 ft. before entering the intersection, in violation of Article 6701d, Sec. 68, (b), and in this respect, he was negligent as a matter of law."

On the question of the sudden stopping of the taxicab, the issues were submitted as follows:

"SPECIAL ISSUE NO. 11: Do you find from a preponderance of the evidence that Joel Fugett on the occasion in question decreased the speed of the taxicab he was driving?

ANSWER 'YES' OR 'NO'

ANSWER: Yes

If you have answered the above and foregoing special issue 'Yes', and only in that event, then answer the following special issue:

SPECIAL ISSUE NO. 11-A: Do you find from a preponderance of the evidence that Joel Fugett on the occasion in question decreased the speed of the taxicab he was driving without first giving a visible signal of his intention to do so?

ANSWER 'YES' OR 'NO'

ANSWER: Yes

If you have answered the above and foregoing special issue 'Yes', and only in that event, then answer the following special issue:

SPECIAL ISSUE NO. 12: Do you find from a preponderance of the evidence that the failure of Joel Fugett to give a visible signal of his intention to suddenly decrease the speed of his taxicab was negligence?

ANSWER 'YES' OR 'NO'

ANSWER: Yes

If you have answered the above and foregoing special issue 'Yes', and only in that event, then answer the following special issue:

SPECIAL ISSUE NO. 13: Do you find from a preponderance of the evidence that such negligence, if any, was a proximate cause of the accident?

ANSWER 'YES' OR 'NO'

ANSWER: Yes."

Special Issue No. 12 was clearly wrong. It assumed a sudden decreasing of speed and it had never been determined that Fugett suddenly decreased the speed of the taxi. The ultimate issue here involved under the pleadings and evidence concerns the action of Fugett in suddenly decreasing his

speed, if he did. Mrs. Hancock testified in part as follows:

"Q. Now, then, if you will, please ma'am, just tell us in your own words what happened as you proceeded through 11th and Columbia, that intersection, and as you proceeded on to 10th and the collision occurred. If you will, just tell us what happened as you recall.

A. As I passed through 11th Street, it was a green light. The light on 10th was red. And as I approached it, it turned green. And I knew there was a car in front of me, and I presumed he was going on through. And I looked up to check the light to be sure it was green and when I looked back down, those lights on the car in front of me were all red. They come to a sudden stop and I hit him.

Q. Are you saying that the light was red when you hit him?

A. No. It was green when I hit him."

\*   \*   \*   \*   \*   \*

"Q. Now, about how far were you down Columbia from the intersection of 11th when the traffic light at 10th and Columbia changed from red to green?

A. Approximately two-thirds of the way down. \* \* \*

Q. And the cab was still considerably in front of you at that time—

A. Yes.         .

Q. I mean it was not just immediately in front of you and presenting any kind of a hazard or anything at all?

A. No."

Mr. Fugett testified in part as follows:

"Q. Now, Joel, I heard you testify a minute ago, but did you ever make any sudden application of your brakes as you—I believe you said you rode your brakes on down to the intersection. Did you ever make any sudden application of them?

A. No, sir.

Q. Did you have any occasion to stop suddenly at any time after you turned there or kind of made that jog past the south end of that esplanade? Did you make any kind of sudden movement or motion while you were going down that way?

A. No, sir.

Q. How did you decrease your speed, then, from about twenty-five miles an hour to—well, how fast were you going? Excuse me. How fast were you going right about the time that you were hit?

A. Oh, I was just barely moving. Might say I was almost stopped.

Q. All right. How did you slow your vehicle, your cab, from twenty-five miles an hour that you were going after you left Eleventh Street to where it was when you were hit?

A. By riding the brake.

Q. All right. Were you gradually slowing down or was this a sudden process?

A. I was just gradually slowing down.

Q. The light was what color as you approached the intersection of Tenth and Columbia?

A. Just turned green just before I got to it there."

Mrs. Davila testified in part as follows:

"Q. All right. But, now, Mr. Fugett didn't make a sudden stop there, stopping for the red light, did he?

A. I don't understand.

Q. Well, I asked you if Mr. Fugett, the cab driver, did he stop suddenly at the red light? What is your testimony today on that?

A. Well, he just stopped.

Q. It wasn't a sudden stop, though, was it, as you indicated in your deposition several months ago?

A. No.

Q. It was not a sudden stop?

A. Well, I don't understand, but we were coming to the red light, and he stopped.

Q. Did he have plenty of time to stop?

A. He didn't stop long enough. He just stopped a little—just for a little —how would I explain it?

Q. For a moment or two?

A. Yes, uh-huh.

Q. He had to stop for the red light, is that your testimony?

A. Yes, uh-huh.

Q. If he had not stopped, would he have run a red light?

A. Oh, yes, uh-huh.

Q. All right. So he stopped for a red light?

A. Yes.

Q. Did you notice anything unusual about the way he stopped for the red light, except that he stopped for it?

A. He just stopped just a little bit, and that light turned green. That's when we started."

\*  \*  \*  \*  \*  \*

"Q. Okay. Would it be fair to say, Mrs. Davila, that he made no unusual stop; that he just did it normally out there at the time when Mr. Fugett stopped for the red light?

A. I believe so.

Q. All right. You are not trying to tell the jury, are you, Mrs. Davila, that Mr. Fugett was driving up to this red light and then all of a sudden stopped, are you?

A. No.

Q. And then you are saying, though, that he did come up to a red light that you saw, and stopped, and then started forward, and if I recall correctly, I believe you said that just after he started forward is when the collision occurred, is that the way you remember it?

A. Yes."

Mrs. Hancock admitted she struck the rear-end of the taxicab as pleaded, and the excuse given by her as to why she rear-ended the taxicab was the sudden stopping of the taxicab. The undisputed evidence is that the Yellow Cab had to stop to keep from running a red light. It is also undisputed that the light turned green just before the taxicab got to the intersection and at the time Mrs. Hancock said she was approximately two-thirds of the way down from the intersection of 11th, and that the taxicab was not just immediately in front of her presenting any kind of hazard or anything at all. It is to be noticed that appellee contends that since the jury had found in answer to Special Issue No. 5 that appellant was negligent and in answer to Special Issue No. 6 that such negligence was a proximate cause of the collision, that any compaint as to Special Issues 11, 11A, 12 and 13 was immaterial.

Since we are of the opinion, and have so held, that Fugett, the driver of the taxicab, had no duty to keep a lookout for vehicles approaching from his rear, and the undisputed record shows that Fugett had to stop to keep from running a red light, that there is no evidence in this record to show any negligence on the part of Fugett and that the judgment of the trial court should be reversed and rendered that appellees re-

cover nothing as against the Yellow Cab Company. Judgment of the trial court is reversed and rendered.

DENTON, C. J., not participating.