**POLK COUNTY MOTOR COMPANY et al., Appellants,**

v.

**Curtis Floyd WRIGHT, Jr., Appellee.**

**No. 16483.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

May 15, 1975.

Rehearing Denied June 5, 1975.

William Drew Perkins, Lufkin, for appellants.

**434**

Joe Ned Dean, J. V. Price, Joe Scott Evans, Groveton, for appellee.

PEDEN, Justice.

Personal injury suit. Defendant Clayton Hollis was driving a car owned by his employer, defendant Polk County Motor Co., when it overtook and struck a motorcycle operated by plaintiff Floyd Wright as Wright was in the process of turning to his right off U. S. Highway 287.

The defendants appeal from a judgment based on jury findings. We summarize the pertinent ones. Defendant Hollis was found negligent in three ways, each of which was found to be a proximate cause of the collision. In response to Issue No. 9, the jury did not find that the plaintiff failed to keep a proper lookout. Issue 10: This proximate cause issue was predicated on an affirmative answer to # 9, so it was not answered. Issue 11: The jury did not find that the plaintiff turned his motorcycle to enter a driveway when it would not have appeared to a person using ordinary care that such movement could be made with safety. Issue No. 12: This proximate cause issue was predicated on an affirmative answer to Issue # 11, so it was not answered. Issue No. 13: Damages to the plaintiff were fixed at $25,250.

Appellants' first point of error is: the trial court erred in refusing to grant defendants' motion for mistrial when plaintiff's counsel, in cross-examining the witness Duke, injected defendants' liability insurance coverage into the lawsuit.

Mr. Weldon Duke was called as a witness by the defendant. We review the pertinent part of his testimony. He went to Groveton to photograph the motor bike involved in the collision. It had heavy collision damage to its right front and to its back. A photograph of it was admitted in evidence, but Duke testified that it doesn't entirely show the damage he saw. On cross-examination he related that he was a physical damage estimator for an independent service in Houston, Martin Claims Service, when he took the picture. He looked at the car in Livingston, then came to Groveton to see the motor bike. Martin Claims Service did a lot of work for companies that have coverage on automobiles and motor bikes. A man named Bill Wyrick sent the claim to Martin Claims Service; he doesn't know what company Wyrick was representing. This question was then asked and this answer was given:

Q. "You don't know then whether or not it was a company that was interested in it from the standpoint of the bike or the standpoint of the car?"

A. "No, sir; I would assume it would be under the interest in the car itself primarily."

No objection was made. Duke testified about how he located the motor bike and took pictures. He said he works as an adjuster and appraiser. He was asked this question:

A. " . . . at the time you were making this investigation and were making these pictures, you were representing some of the (sic) insurance carrier, other than Curtis Floyd Wright? In other words, it was someone else, say Polk County Motor Company?"

The question was not answered. Outside the hearing of the jury the appellant moved for a mistrial and objected to the question. The motion for mistrial was overruled, the objection was sustained and the trial judge's offer to instruct the jury to disregard the last question was declined by appellants' counsel.

Appellee contends that Duke's testimony as to where the motor bike was damaged contradicts appellee's theory of how the collision occurred, so he was entitled to question Duke about his employment to show his interest, bias or motive.

In Aguilera v. Reynolds Well Service, 234 S.W.2d 282 (Tex.Civ.App.1950, writ ref.), the court stated:

"We are unwilling to hold that an agent of an insurance company which is a real party at interest may take the stand as an apparently disinterested witness, give testimony damaging to the opposing party, and then be exempt from cross-examination designed to show his connection with the company."

■ In our case the appellants' theory was that the appellee was going all over the road, so appellants' driver stopped the car and appellee came over to the right edge of the road and ran into the car. Appellee testified that he was driving on the right-hand side of the road and appellants' car struck the rear of his motor bike as he was leaving the highway. We conclude that Duke's testimony, that there was more damage to the motor bike than the pictures show and that there was heavy collision damage to its right front, was calculated to be damaging to the plaintiff-appellee and that the quoted rule from the Aguilera case should be applied here. See also Barton Plumbing Co. v. Johnson, 285 S.W.2d 780 (Tex.Civ.App.1955, writ ref.).

■ Further, the question complained about was not answered, and no objection was made to the earlier question which Duke answered by saying he assumed that the company that hired him was interested in the car. By then the jury could tell that he considered he was working for the appellants' insurance carrier. Nothing new was added by the unanswered question. We overrule the first point.

The appellants' second and third points of error complain that the trial court erred in failing to disregard the jury's answers to Special Issues 9 and 10 and in failing to grant their motion for judgment n. o. v. because the evidence shows as a matter of law that the plaintiff failed to keep a proper lookout and that such failure was a proximate cause of the collision.

■ The lead driver is under no duty to keep a lookout for traffic which approaches from the rear unless he does something such as change his lane or direction, stop or suddenly decelerate. Yellow Cab Co. v. Davila, 454 S.W.2d 266 (Tex.Civ.App.1970, writ ref. n. r. e.).

■ The issues in question were ones on which the appellants-defendants had the burden of proof. In deciding legal sufficiency points of error, we first determine whether there was any evidence to support the jury's answers to those issues, considering only the evidence and inferences tending to support the findings and disregarding all evidence and inferences to the contrary. Garza v. Alviar, 395 S.W.2d 821 (Tex.1965).

■ Witness Thomas Kesinger testified it was dark when the accident happened. He saw the plaintiff when he was approaching, about 75 to 100 yards away, and the plaintiff had his lights and his right-turn signal light on at that time. The plaintiff had come over a hill some 150 to 200 yards from where the witness was. He would say the car was going 65 or 70 miles an hour.

The plaintiff said he was traveling in his right-hand lane when he slowed down to turn off the highway to his right. He had his right-hand turn signal on for 50 to 75 yards before he turned and was hit. He later said he had had his turn signal on for 6 or 8 yards before he started turning. He didn't see the car or its lights before it hit him, and he was not aware that it was behind him. He had been traveling about 35 or 40 miles per hour and he slowed to 10 or 15 miles an hour in "six to eight yards, I guess." He later said it took him only three or four yards to slow down for his turn and that he put his brakes on, enough to make his signal light come on, when he was "a hundred, three hundred" feet up the road.

Mrs. Westerfield testified that she heard defendant Mr. Hollis say, immediately aft-

er the accident, that he thought the motorcycle was going to turn in the other driveway, but it didn't. The witness explained that she presumed he meant the second driveway, the one that goes into the cafe where she was working.

Mrs. Jewel Snyder testified that just before the accident happened she was riding in a truck that was meeting the plaintiff's motorcycle and the defendants' car; her truck had to stop and let them by, because she was going to turn left into a driveway. When she turned in, right after they went by, she heard the collision. She had seen their lights as they approached.

We overrule this point. The plaintiff's testimony as to where he was when he slowed down is conflicting, but testimony of estimates of distances is opinion evidence and is not binding. The jury could have believed he was braking his motorcycle for the last 100 to 300 feet he traveled and that when he was hit from the rear he was slowing down to turn off the road into a cafe. The cafe is away from any town and the record does not show what exterior lighting, if any, there was. There was evidence that the car was going at an excessive rate of speed, so when the plaintiff started slowing down, as much as 300 feet before impact, the car would have been far behind him. Just before he was hit the plaintiff had met a truck that was stopped and was signalling for a left turn across his lane. It was dark. Plaintiff did not say he did not look behind him; he said he was not aware that there was a car behind him. He did not stop before he was hit.

The defendants had the burden of showing that just before and as the plaintiff slowed his vehicle enough to turn off the road, he failed to keep such a lookout for vehicles to his rear as a person of ordinary prudence in the exercise of ordinary care would have kept under these circumstances.

We hold that this evidence does not show as a matter of law that he failed to keep such a lookout. The jury was enti-

tled to conclude that the plaintiff was traveling in the proper lane at a reasonable speed (35 m. p. h.), that he activated his turn and brake lights, that he slowed his motorcycle at a reasonable rate and that when he began to slow down the car was so far behind him that a person of ordinary prudence would not have been concerned about it had he looked, but that the car was going so fast it overtook the plaintiff before he could leave the road. Further, that he had to direct his attention to the truck he was meeting and the driveway he was to enter.

See Kerr v. Dildine, 410 S.W.2d 808 (Tex.Civ.App.1967, no writ).

Having decided that the trial court did not err in declining to disregard the answer to Issue No. 9 the lookout issue, we do not reach the point of error based on the answer to No. 10, the proximate cause issue.

■ Appellants' fourth point is that the trial court erred in failing to disregard the jury's answer to Special Issue No. 11 and to grant a judgment n. o. v. because the evidence shows as a matter of law that the plaintiff was in the process of making a right turn into a private driveway when it could not be made with safety. Sec. 68(a) of Art. 6701d, Vernon's Ann. Texas Civil Statutes, provides:

"No person shall turn a vehicle at an intersection unless the vehicle is in a proper position upon the roadway as required in Section 65, or turn a vehicle to enter a private road or driveway or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with safety. No person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided in the event any other traffic may be affected by such movement."

Under the facts in this case the trial court did not err in refusing to disregard

the jury's answer to Special Issue No. 11. As we have noted, there is evidence that the plaintiff was still on the roadway when he was overtaken and hit by defendants' car.

Paragraph (c) of Sec. 68 requires one who stops or suddenly decreases speed to give an appropriate signal to any driver immediately to the rear, when there is an opportunity to do so. It appears to be the paragraph of that section which regulates slowing to make a turn.

■ Appellants' next two points argue that the trial court erred in permitting the jury to consider plaintiff's past loss of earnings because there is no evidence or insufficient evidence to warrant a finding of lost earnings in the past. Both these points present only points of legal sufficiency, or no evidence; trial courts are required to permit the jury to consider all pertinent matters raised by any evidence (more than a scintilla).

■ We overrule these points. The plaintiff testified that he was to go to work the day after the accident for $75 per week. He was hospitalized for several days and a doctor testified he could not work during the several months he had to wear a cast on his leg.

■ Appellants' eighth point is that the trial court erred in permitting the jury to consider the plaintiff's diminished capacity to labor and work, because there is no evidence of such diminished capacity; their ninth point complains of the same action of the trial court because there was insufficient evidence to warrant a finding of diminished capacity. Again, these points present only legal sufficiency, or no evidence, points. We overrule them.

The plaintiff has an eighth-grade education. He had four breaks in the bones in his right leg and ankle. He still has a steel plate in his leg. His doctor testified that those who have such breaks and operations usually have aches or soreness on long standing or walking, and if the plaintiff worked on his feet for eight hours a day it is very probable that he would have some pain.

The plaintiff testified that he works at carpentry and roofing. Carrying big loads, as he has to do as a roofer, causes pain in his leg. He said that on his first job, some eight months after the accident, he quit working on an apartment project because the man said he was too slow and he couldn't stay up with the other workers. He stated that he often has pain in his leg, and he cannot work normally with it like he did before.

■ The appellants' last point of error is that the trial court erred in failing to grant a new trial because the jury's verdict of $25,250 is so excessive as to show jury prejudice against the defendants. We have examined the entire record in this case, and we cannot say the verdict is excessive.

"The burden of establishing that the jury's evaluation of damages is erroneous is upon the complaining party. . . . In determining whether a verdict is 'excessive' the courts must review only that evidence favorable to the award, and the findings of the jury thereon will not be disturbed on ground of 'excessiveness' if there is any evidence to sustain the award; . . . there must be some circumstantial indication of bias or prejudice; matters of pain, suffering, and general damages are peculiarly within the discretion of the jury . . . .. The mere fact that the verdict is large is not conclusive that it is the result of passion, prejudice, sympathy or other considerations not found in the evidence." Hammond v. Stricklen, 498 S.W.2d 356 (Tex.Civ.App.1973, writ ref. n. r. e.).

Appellants do not bring forward any affirmative evidence of bias or prejudice. There is evidence in the record, in addition to that already noticed, from which the

jury was entitled to believe that the plaintiff suffered severe pain until sedated at the hospital, that he has had pain intermittently ever since the accident in December, 1971, that he wore casts on his leg for a total of nearly five months, that he couldn't work for nearly a year and a half after the accident and that his medical bills have amounted to more than $1250.

The judgment of the trial court is affirmed.